STATE OF NORTH CAROLINA v. SHEILA DAVIS
No. 805SC153

(Filed 2 September 1980)

1. **False Pretense § 1– falsification of expense records – no false pretense**

    The falsification of expense records cannot in itself constitute the crime of false pretense.

2. **False Pretense § 3.1– checks written for train tickets – false statement in voucher – insufficiency of evidence of false pretense**

    In a prosecution for obtaining property by false pretenses where the evidence tended to show that defendant, a town official with the authority to draw checks, wrote checks to an attorney which were co-signed by a town council member and which were paid by the bank, that defendant obtained Amtrak tickets in return for the checks, and that vouchers in support of the checks falsely described the expenditure as being for "miscellaneous printed information" and "copies of legal case," defendant's motion for nonsuit should have been granted, since the evidence did not show that the information written on the expense vouchers induced the town to part with its money or in any way caused the payments to be made.

3. **Municipal Corporations § 9– checks written by town finance officer for train tickets – vouchers for different items – negligent discharge of duties**

    Evidence was sufficient to support a reasonable inference that defendant town manager acted negligently or carelessly in the discharge of her duties in violation of G.S. 159-181 where it tended to show that she signed two checks on the account of the town for "miscellaneous printed information" and "copies of legal case" while the expenditures were actually for the purchase of Amtrak train tickets for travel to a presidential inauguration.

4. **Municipal Corporations § 9– town finance officer – checks written for train tickets – approval of invalid claim – failure to preaudit**

    The trial court properly submitted the charges of approving an invalid claim and failure to preaudit by defendant town finance officer to the jury where the evidence tended to show that defendant purchased train tickets to

State v. Davis

the presidential inauguration both for members of the town council and for persons not employed by the town and the expenditure therefore consisted of both valid and invalid obligations of the town; moreover, the fact that town council members knew of or approved of the expenditure of funds for persons not employed by the town or that defendant acted at the direction of the mayor in ordering tickets for a friend of the town and his wife did not either validate the expenditures or relieve defendant, as finance officer, of liability for approving a false, invalid or erroneous claim in violation of the duties imposed upon her by law.

5. **Municipal Corporations § 9– town finance officer's approval of false claim – making false report – election not required**

The State was not required to elect between the offenses of approving a false claim in violation of G.S. 159-181 and making a false report, since the elements of the two charges were not the same.

APPEAL by defendant from *Small, Judge.* Judgment entered 28 June 1979 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 10 June 1980.

The defendant, Sheila Davis, was brought to trial at the June 25, 1979 session of New Hanover Superior Court. The defendant was charged in two indictments, five counts each, with the crimes of false pretenses, approving fraudulent claim, making false report, failure to preaudit, and failure to keep accurate records.

The evidence presented at trial shows that the defendant was the Town Manager of the Town of Carolina Beach, North Carolina. Two checks, in the amount of $248 and $31 were issued by the Town to Mr. George Anderson. These checks were signed by the defendant and a member of the Carolina Beach City Council. The expenditure of these funds was for the purchase of Amtrak train tickets for travel by rail from Raleigh, North Carolina to Washington, D.C. to the presidential inauguration of President Jimmy Carter. The vouchers prepared in support of these expenditures did not indicate the purchase of train tickets. The voucher in support of the $248 check described the expenditure as a purchase of copies of a legal case involving litigation of the demolition of the Daykmer House. (Spelling varies in record. In indictment and copy of voucher it is Daykmer.) The voucher in support of the $31 check described that expenditure as for the purchase of materials.

The State first presented the testimony of several members of the City Council of Carolina Beach who were on the Council in the latter part of 1976 and the beginning of 1977. They testified that they recalled discussing which Council members would attend the Inauguration in January 1977; that the Town's newspaper published news of the Council's invitation to the Inauguration; that the Council did not vote on whether the Town would pay for the train tickets to Washington and that it was not customary to vote on such matters; that money was allocated in the budget of the Town for travel expenses of the Town Council and employees. No mention of the trip to Washington was ever made in the Council Minutes.

Robert Lyons, Jr., a professional engineer who had done work for the Town, testified that in November 1976 he and defendant travelled to Washington to determine the status of the Town's application for an Economic Development Administration (hereinafter EDA) grant; and that they conferred with the chief counsel of EDA who he believed was named Anderson.

H.S. Jackson, Superintendent of the Carolina Beach State Park, testified that he obtained his and his wife's train tickets through defendant; and that he could not remember whether he paid for said tickets.

George Anderson, a United States Attorney in Raleigh, testified that in the latter part of 1976 and early 1977 he was in charge of making train reservations to the Inauguration. He further testified that in late November 1976 he received a letter from defendant requesting train reservations for Mr. and Mrs. Richard B. Kepley, Mr. and Mrs. Ernest N. Bame, defendant and her husband, and Mr. and Mrs. Pete Jackson. Enclosed was a check to Anderson for $248. In early December 1976 defendant sent Anderson another letter requesting one more train ticket. She enclosed a check for $31.00. These checks were endorsed and deposited by Anderson. Anderson further testified that he did not recognize defendant and did not know whether he had ever met her.

Mrs. Thompson, defendant's secretary, testified as to the procedure which was followed for drawing checks on the Town account. Under the procedure a copy of each check was to be

attached to a voucher and filed. A voucher was to be filled out at the same time or before the check was drawn. Mrs. Thompson could not recall being involved in the preparation of the two checks and vouchers at issue. She further testified that she had been unable to find copies of the two letters to Anderson in the Town records.

Neil Godfrey, an SBI Agent, testified that during his investigation of the matters at issue he took into custody the two checks and vouchers from the Town records. He obtained copies of the two letters to George Anderson from Anderson's office. Anderson told Godfrey that he had never done any legal work for the Town. On 14 September 1978 and 20 October 1978 Godfrey talked with defendant about the investigation. Defendant told him that she, her husband and son, and the Kepleys attended the Inauguration; that the Town paid for their motel rooms; that she personally paid for the train tickets with her own money and that the checks to Anderson were for legal work he had done for the Town. Defendant further told him that she preaudited every check until she was appointed Town Manager and then instructed her office employees to preaudit each check; that the Town did not pay any of the Jacksons' expenses at the Inauguration; that she may have asked Anderson to get the train tickets and that she may have inadvertently indicated legal work on the vouchers for the checks to Anderson.

Defendant testified that prior to coming to Carolina Beach, she was Town Clerk and Secretary to the Town Manager in Wilson. While holding her positions at Carolina Beach, she worked 12 to 18 hours a day, seven days a week. Sometimes she signed 100 checks at a time. The vouchers rarely came to her desk with the checks. She remembered signing the two letters to Anderson and thought that the two checks were attached to the letters when she signed them. Her explanation for the checks and vouchers was as follows: She did not remember when she signed the checks or the two vouchers. Even though the vouchers were dated the same as the checks, they were probably filled out at a later date. Most likely the two checks were placed on her desk without vouchers. When she saw that they were drawn to an attorney, she assumed they were for legal work performed and indicated so on the vouchers.

Upon the motion of the defendant, the Court struck count 5 of each indictment, failure to keep accurate records, finding that Section 2-2003 of the Code of Ordinances of the Town of Carolina Beach was unconstitutional. The jury found the defendant guilty on the remaining four counts of each Bill of Indictment. Upon the verdict, the Court consolidated counts 2, 3, and 4 of each indictment for judgment and ordered the defendant to pay a fine of $250.00. Upon the verdict, the Court consolidated count 1 in each indictment for judgment and ordered that the defendant be imprisoned for a term of three years in the North Carolina Department of Correction. This sentence was suspended for three years and the defendant was placed on probation. The defendant was further ordered to pay a fine of $1,000.00, pay the cost of court, and pay restitution to the Town of Carolina Beach in the amount of $279.00. From this judgment the defendant appeals.

*Attorney General Edmisten by Assistant Attorney General Elizabeth C. Bunting and Assistant Attorney General Kaye R. Webb for the State.*

*W.G. Smith and Bruce H. Jackson, Jr., and George H. Sperry, for the defendant.*

MARTIN (Robert M.), Judge.

Defendant contends that the trial court erred when it failed to grant defendant's motions to dismiss counts one, two, three, and four of each indictment at the conclusion of all the evidence.

Upon defendant's motion for dismissal, the question for the court is whether there is substantial evidence (1) of each essential element of the offense charged and (2) of defendant being the perpetrator of such offense. *State v. Powell,* 299 N.C. 95, 261 S.E. 2d 114 (1980).

Count one of each indictment charges defendant with the crime of obtaining property by false pretenses in violation of G.S. 14-100. Each count alleges, in essence, that defendant did "unlawfully, willfully, knowingly, designedly, feloniously, and

with intent to deceive and defraud falsely present and represent unto the Town of Carolina Beach," that public expenditures in the amount of $31.00 and $248.00 were for "miscellaneous printed information" and "copies of legal case" whereas the expenditures were actually for the purchase of Amtrak train tickets and that by means of such false pretense knowingly caused the Town to pay certain sums of money for the purchase of train tickets.

The essential elements of the crime of obtaining property by false pretenses are as follows: "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another." *State v. Cronin*, 299 N.C. 229, 242, 262 S.E. 2d 277, 286 (1980).

[1,2]   Under the circumstances of this case, there is no evidence that the information written on the expense voucher, the alleged misrepresentation, was the means by which defendant obtained property from the Town. The falsification of expense records cannot in itself constitute the crime of false pretenses. It is essential that the false pretense must have included the transfer of money or property. There must be a causal relationship between the representation alleged to have been made and the obtaining of the money or property. In the present case, defendant, a town official with the authority to draw checks, wrote a check to Attorney George M. Anderson which was co-signed by council member Whitley and which was paid by the bank. In return for the check defendant obtained Amtrak tickets. The evidence does not show that the statement or voucher induced the Town to part with its money or in any way caused the payment to be made. While the misrepresentation of the purpose of the expenditure in the voucher may be false, the State has not shown that defendant obtained property based upon the false voucher. *See State v. Cronin, supra.* Because the State has not established a causal relationship between the voucher and the obtaining of the property, defendant's motions for nonsuit should have been granted on counts one of each indictment.

[3] The three remaining counts of each indictment concern the liability of an officer or employee of local government under G.S. 159-181 which governs the enforcement of the Local Government Finance Act.

Count II of each indictment alleges essentially that the defendant, as Town Manager, Finance Officer, and Town Treasurer did *"unlawfully, willfully, with deceit and the intent to defraud"* (emphasis added) make false written statements and false reports by use of vouchers that certain checks were for matters other than expenditures for train tickets in violation of GS 159-181.

Count III of each indictment alleges essentially that the defendant, as Town Manager, Finance Officer, and Town Treasurer did *"unlawfully, willfully, with deceit and intent to defraud"* (emphasis added) make false written statements and false reports by use of vouchers that certain checks were for matters other than expenditures for train tickets in violation of GS 159-181.

Count IV of each indictment alleges essentially that the defendant, as Town Manager, Finance Officer, and Town Treasurer did *"unlawfully, willfully, with deceit and an intent to defraud"* (emphasis added) fail to "pre-audit" obligations and disbursements represented by checks used for the purchase of train tickets in violation of GS 159-25(a)(2) and 159-181.

Defendant contends that there is no substantial evidence to support a reasonable inference that defendant acted knowingly, designedly, willfully and with intent to defraud.

In order for the State to prove official misconduct proscribed by G.S. 159-181, it is not necessary for the State to prove a corrupt intent or wilful design to cheat and defraud the public. "Every public officer is bound to perform the duties of his office faithfully, and to use reasonable skill and diligence, and to act primarily for the benefit of the public." *Avery County v. Braswell*, 215 N.C. 270, 275, 1 S.E. 2d 864, 867 (1939). The foundation of liability of public officers has been expressed as follows:

State v. Davis

"However honest the defendants may be (and their honesty is not called in question) the public have a right to be protected against the wrongful conduct of their servants, if there is carelessness amounting to a wilful want of care in the discharge of their official duties, which injures the public." *State v. Anderson*, 196 N.C. 771, 773, 147 S.E. 305, 306 (1929) (construing G.S. 14-230 which governs the wilful failure of a public officer to discharge his duties); *State v. Hatch*, 116 N.C. 1003, 1006, 21 S.E. 430, 431 (1895). We think there is sufficient evidence to support a reasonable inference that defendant acted negligently or carelessly in the discharge of her duties in violation of G.S. 159-181.

[4] As to count four of the indictments, wilful failure to preaudit, defendant further contends that the prosecution against defendant is inconsistent with the State's evidence that the purchase of train tickets was not a valid expense of the Town. In *State v. Davis*, 45 N.C. App. 72, 262 S.E. 2d 827 (1980), we held that the duty to preaudit does not arise until there is a valid obligation of the Town. In the present case, defendant purchased train tickets to the Presidential Inauguration both for members of the Town Council and for persons not employed by the Town. There is sufficient evidence, therefore, that the expenditure of funds for the purchase of train tickets consisted of both valid and invalid obligations of the Town. The fact that Town Council members knew of or approved of the expenditure of funds for persons not employed by the Town or that defendant acted at the direction of the Mayor in ordering tickets for a friend of the Town and his wife does not either validate the expenditures or relieve defendant, as finance officer, of liability for approving a false, invalid or erroneous claim in violation of the duties imposed upon her by law. *Avery County v. Braswell*, 215 N.C. 270, 1 S.E. 2d 864 (1939). Thus, where the evidence shows that the expenditures contained both valid and invalid items, the court properly submitted the charges of approving an invalid claim and failure to preaudit to the jury.,

[5] Defendant, by her seventh assignment of error, contends the court erred in not allowing the defendant's motion to require the State to make an election as to counts two and three in each indictment. Defendant contends the acts alleged in counts

State v. Davis

two and three, the acts of signing the checks and writing the purpose of the expenditure on the voucher, are the same acts, thus allowing the defendant to be twice convicted and sentenced for the same criminal offense. Defendant relies on *State v. Summrell*, 282 N.C. 157, 192 S.E. 2d 569 (1972).

While it is true that both charges arise out of the same transactions, the elements of the two charges are not the same. The elements of approving a false claim in violation of G.S. 159-181 are (1) that the defendant was a finance officer, other officer or employee of local government (2) that in such capacity she approved a claim or bill, and (3) that at the time she approved the claim or bill she knew it was fraudulent, erroneous or otherwise invalid. The elements of making a false report in violation of G.S. 159-181 are (1) that defendant was a finance officer, other officer or employee of local government (2) that the written statement, in this case the voucher, was required by rules and regulations established by the Town of Carolina Beach for the lawful disbursement of funds, and (3) that defendant made a written statement on a voucher knowing that a portion of it was false. Because the elements of the two charges of approving a valid claim and making a false statement are not the same the State was not required to make an election between counts two and three. *State v. Evans*, 40 N.C. App. 730, 253 S.E. 2d 590 (1979).

Defendant by her seventh, eighth, tenth, eleventh and twelfth assignments of error contends the court erred in its instructions and charge to the jury. We note that as to the tenth through twelfth assignments of error that defendant did not bring the alleged misstatement of defendant's contentions to the court's attention nor did she request specific instructions or object to those portions of the court's charge about which she now complains. Nevertheless we have carefully reviewed the entire charge and find no prejudicial error. We have also examined defendant's first through fourth assignments of error and find them to be without merit. In view of our holding, it is not necessary for us to discuss defendant's ninth assignment of error relating to the court's charge on false pretenses.

Counts 1 of case No. 78CRS24117 and case No. 78CRS24119 are reversed.

In Counts 2, 3, and 4 of case No. 78CRS24117 and case No. 78CRS24119 we find no error.

Judges HEDRICK and MARTIN (Harry C.), concur.