STATE OF NORTH CAROLINA v. TIMOTHY MICHAEL ALMOND

STATE OF NORTH CAROLINA v. MICHAEL A. ALMOND

No. 9223SC885

(Filed 5 October 1993)

1. **Appeal and Error § 155 (NCI4th)— consolidation of two indictments—issue not properly before court—no plain error**

    Defendant's contention that the consolidation of two indictments against him into one count was improper because nothing in the Criminal Procedure Act allowed indictments to be consolidated was not properly before the court on appeal where defendant failed to object to the consolidation, and consolidation did not amount to plain error in light of the fact that it reduced defendant's risk of conviction from two counts with possible imprisonment of twenty years to one count with possible imprisonment of ten years, and defendant failed to offer any authority in favor of this assignment of error.

    **Am Jur 2d, Appeal and Error § 562 et seq.**

2. **False Pretenses, Cheats, and Related Offenses § 5 (NCI4th)— obtaining property by false pretenses—consolidation of indictments—defendant not denied right to unanimous verdict**

    There was no merit to defendant's contention that, by consolidating two indictments for obtaining property by false pretenses into one count, the trial court denied defendant his right to a unanimous verdict because of the potential for disagreement between the jurors as to the person with whom defendant conspired, since the gravamen of the offense of conspiracy to obtain property by false pretenses is not the conduct of defendant, but his intent or purpose in attempting to obtain property by false pretenses; a unanimous verdict was required only as to the offense of conspiracy to obtain property by false pretenses and not to the persons with whom defendant conspired; and N.C.G.S. § 14-100, the statute under which defendant was convicted, does not enumerate any specific activities which are separately punishable.

    **Am Jur 2d, False Pretenses § 60 et seq.**

STATE v. ALMOND

[112 N.C. App. 137 (1993)]

3. **False Pretenses, Cheats, and Related Offenses § 18 (NCI4th) — obtaining property by false pretenses — invoicing goods not received — inflated invoices — misrepresentations — connection between misrepresentations and defendant's kickbacks — sufficiency of evidence**

In a prosecution of defendant for obtaining property by false pretenses, there was no merit to defendant's contention that there was insufficient evidence of misrepresentation or that, even if misrepresentations did occur, then there was no causal relationship between the misrepresentations and his receipt of any moneys, since defendant, as purchasing agent for his company, was authorized to approve payment of all expenses on behalf of the company; the submission of invoices for goods not received was therefore a misrepresentation; defendant as purchasing agent was responsible for obtaining the best price possible; every time he approved or authorized an invoice to be paid, he was making an implicit representation that he had obtained the best possible price and not one that was 20% above normal; defendant's company would not have paid the inflated invoices but for defendant's approval of such; and it was the company's payment of these inflated invoices which allowed defendant to receive his kickback.

**Am Jur 2d, False Pretenses § 70 et seq.**

4. **Indictment, Information, and Criminal Pleadings § 30 (NCI4th) — failure to allege county where offense occurred — motion to quash denied — no error**

The trial court did not err in denying defendant's motion to quash an indictment because it failed to allege in the body thereof the county in which the alleged activities took place where this indictment and all other indictments against defendant were captioned as from Wilkes County; all other indictments contained the phrase "in the county named above"; this indictment charged defendant with obtaining money by false pretenses from a named corporation, and the corporation is located in Wilkes County; and sufficient information was thus contained in the indictment to confer jurisdiction on the Wilkes County grand jury and to inform defendant that the charges against him arose from activities in Wilkes County.

**Am Jur 2d, Indictments and Informations §§ 122, 123.**

STATE v. ALMOND

[112 N.C. App. 137 (1993)]

**5. Evidence and Witnesses § 2452 (NCI4th)— subpoenas duces tecum—attempt to circumvent discovery—quashal proper**

The trial court did not err in quashing a portion of defendants' subpoenas duces tecum where the trial court properly determined that the subpoenas were really discovery devices intended to circumvent the normal discovery process.

**Am Jur 2d, Witnesses § 22.**

**6. Appeal and Error § 447 (NCI4th)— trial court's communications with prosecutor—issue raised for first time on appeal**

Defendants could not raise for the first time on appeal their objection to the trial court's *ex parte* communications with the prosecutor while defense counsel was outside the courtroom.

**Am Jur 2d, Appeal and Error § 702 et seq.**

Judge GREENE concurring in part and dissenting in part.

Appeal by defendants from judgments and commitments entered 28 February 1992 by Judge Marcus Johnson in Wilkes County Superior Court. Heard in the Court of Appeals 16 June 1993.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Lars F. Nance, for the State.*

*Wilson, Palmer, Lackey and Starnes, P.A., by W.C. Palmer and Wesley E. Starnes, for defendants-appellants.*

LEWIS, Judge.

Defendant Michael Almond was indicted on three counts of obtaining property by false pretenses and three counts of conspiracy to commit false pretenses. Defendant Timothy Almond was indicted on two counts of conspiracy to commit false pretenses. The jury returned guilty verdicts on all counts and defendants appealed.

The evidence presented below tended to show that Michael Almond worked as the purchasing agent for Carolina Mirror Corporation ("CMC"). Throughout the time period relevant to this appeal, CMC was in the business of manufacturing mirrors and as part of its manufacturing process, CMC purchased various items and services from Minton Electric and Carolina Glue Chip ("CGC").

STATE v. ALMOND

[112 N.C. App. 137 (1993)]

The businesses of CMC and CGC were closely linked with CGC providing most of the glass used in the production of CMC's mirrors. Conversely, CMC was CGC's main customer. Thus, due to his position as purchasing agent, Michael Almond maintained a very close relationship with CGC. In fact Michael Almond co-founded CGC with Jerry Minton but remained a silent partner.

At trial, the State presented evidence that Michael Almond was directly involved in a kickback scheme with Jerry Minton, in which Minton Electric charged prices 40% over cost to CMC instead of the customary 20% charged to other customers. Cash, loans and tangible personal property were given to Michael Almond in exchange for his role in the kickback scheme. The State also contended that Michael Almond caused CMC to purchase glue from Sutton Supply when in fact no glue was ever delivered to CMC. Employees at CMC testified that glue was never used in any of its processes and there was no reason to purchase such. The glue, in fact, though paid for by CMC was actually delivered to CGC.

Tim Almond, Michael Almond's son, was also indicted for his role in the kickback scheme as a co-conspirator. Many of the kickback payments delivered to Michael Almond were paid to a company called TMA Sales, whose sole purpose was to receive the illegal payments. Tim Almond's responsibility was to pick up the payments from Jerry Minton and deliver them to Michael Almond. For his part, Tim Almond received an auto loan and also an all expense paid trip to England.

In his defense, Michael Almond attempted to offer evidence to show that his supervisors were aware that CMC was paying to have glue shipped to CGC because CMC was actively involved in assisting CGC due to CMC's reliance on CGC's glass for the production of its mirrors. Further, Michael Almond contended that for any glue which CMC paid to have delivered to CGC, it received compensation in the form of services. Michael Almond also asserted that CMC was aware of his interest in CGC and that any payments he received from CGC were merely compensation for his time and energy.

---

Counsel has submitted a single brief on behalf of both defendants combining several assignments of error peculiar to the individual defendants. The first two assignments of error, dealing with Tim Almond, are substantially related and we have chosen

to address them together. The first assignment of error contends that the trial court denied Tim Almond his right to a unanimous verdict by submitting the two conspiracy indictments to the jury together. The second assignment of error alleges that the trial court erred in combining the two indictments together. We will address these issues in the order in which they arose during trial.

[1] The first indictment charged Tim Almond with "conspir[ing] with John Minton, Jerry Minton, doing business as Minton Electric, Michael A. Almond and others to commit the felony of obtaining property by false pretenses. . . ." In contrast, the second indictment alleged that Tim Almond "conspire[d] with Jerry Minton, doing business as Carolina Glue Chip, and Michael A. Almond and others to commit the felony of obtaining property by false pretenses. . . ." However, at the conclusion of the State's evidence, the State decided, and the trial court consented, to combine the conspiracy indictments into a single count. Although not specifically denominated as such, we will treat the State's request as a motion to consolidate. It is Tim Almond's contention that the consolidation of the indictments was improper because nothing in the Criminal Procedure Act allows indictments to be consolidated. We disagree.

Before we may address the merits of this assignment of error, we must first determine whether the issue has been properly preserved for appeal. After reviewing the record it is clear that defendant, represented by competent counsel, failed to object to the consolidation of the indictments. Nothing else appearing this assignment of error would be improper because it is well established that an issue may not be raised for the first time on appeal. *See State v. Oliver*, 309 N.C. 326, 307 S.E.2d 304 (1983) (failure to object at trial constitutes waiver on appeal). However, since defendant's first two assignments of error overlap and since defendant has asserted a plain error exception in the first assignment of error, we have undertaken a review of the record to determine if plain error applies to this assignment of error.

The plain error exception was first adopted by our Supreme Court in *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). In *Odom*, the Supreme Court quoted from the Fourth Circuit's opinion in *United States v. McCaskill*, 676 F.2d 995 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L.Ed. 2d (1982), and held that:

[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the

entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*Odom* at 660, 300 S.E.2d at 378 (citations omitted). Recently, the Supreme Court has reexamined the plain error exception in *State v. Collins*, 334 N.C. 54, 431 S.E.2d 188 (1993). Therein, the Supreme Court reemphasized the fact that plain error occurs only in "rare cases" where the error is "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." *Id.* at 62, 431 S.E.2d at 193 (citations omitted). We do not believe that this is one of those rare cases.

We note, at the outset that defendant was represented by counsel when the State moved to consolidate the indictments and defendant's counsel did not object. The reason for this is readily apparent. Prior to the consolidation of the indictments Tim Almond faced two possible convictions, each carrying a maximum of ten years imprisonment. After the consolidation, Tim Almond was at risk only for a single count of conspiracy carrying a maximum of ten years imprisonment. Thus, the consolidation of the indictments was not prejudicial to defendant, but rather beneficial to him. It is also easy to understand why the State sought to consolidate the indictments against Tim Almond. Because of the overlap in the evidence, there was the potential for confusion among the jurors between the two conspiracies. However, once the indictments were consolidated, the State was left with one readily understood count of conspiracy capable of proof by multiple means.

In addition, we note that Tim Almond has failed to offer any authority in favor of this assignment of error. *See Byrne v. Bordeaux*, 85 N.C. App. 262, 354 S.E.2d 277 (1987). We do not believe that Tim Almond's bald assertion of the Criminal Procedure Act meets the requirements of N.C.R.App. P. 28(b)(5) because as stated in

## STATE v. ALMOND

[112 N.C. App. 137 (1993)]

*S.J. Groves & Sons & Co. v. State*, 50 N.C. App. 1, 273 S.E.2d 465 (1980), *disc. rev. denied*, 302 N.C. 396, 279 S.E.2d 353 (1981), this Court will not "'fish out' an appellant's exception which is not properly presented." *Id.* at 69, 273 S.E.2d at 501. Taking all of these factors into consideration, we find no plain error. Defendant's second assignment of error is dismissed.

We now turn to Tim Almond's first assignment of error in which he contends that the trial court erred in submitting the consolidated indictments to the jury together in that this deprived him of his constitutional right to a unanimous verdict. However, before addressing the merits of this assignment of error, we must again determine whether the issue has been properly preserved. Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure provides:

A party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection; . . . .

It is undisputed that defendant failed to object to the trial court's instructions to the jury submitting the consolidated indictments together to the jury as one count. However, Tim Almond asserts that this was plain error. Because the error was such that defendant was potentially deprived of his fundamental right to a unanimous verdict, we have decided to address the merits of this assignment of error.

[2] Tim Almond argues that by consolidating the indictments the trial court denied him his right to a unanimous verdict because of the potential for disagreement between the jurors as to whom he conspired. We disagree and find the facts of this situation analogous to those in *State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990). There, our Supreme Court upheld a conviction for indecent liberties even though the trial court had charged the jury in an ambiguous manner that allowed for disagreement among the jurors as to the immoral acts committed by the defendant. The Supreme Court stated that: "Even if we assume that some jurors found that one type of sexual conduct occurred and others found that another transpired, the fact remains that the jury as a whole would unanimously find that there occurred sexual conduct within the ambit of 'any immoral, improper, or indecent liberties.'" *Id.* at 565, 391 S.E.2d at 179. In reaching its decision the Supreme

Court distinguished its previous decision in *State v. Diaz*, 317 N.C. 545, 346 S.E.2d 488 (1986). The Supreme Court concluded that the jury instructions in *Diaz* were improper because they allowed the jury to convict the defendant if they found that he either possessed or transported drugs. Such an instruction was erroneous because the drug trafficking statute enumerated specific activities, each of which was punishable separately. In contrast, the statute on indecent liberties, which was construed in *Hartness*, merely prohibited immoral, improper or indecent liberties but not any specific activities which were punishable separately.

Since *Diaz* and *Hartness*, our Supreme Court has revisited the issue of unanimous jury verdicts in *State v. Lyons*, 330 N.C. 298, 412 S.E.2d 308 (1991) (4-3 decision). In *Lyons*, the Supreme Court remanded a secretive assault charge for a new trial because the trial court's disjunctive instructions allowed the jurors to disagree as to which victim defendant assaulted. In reaching its decision, the Court reviewed both *Diaz* and *Hartness* and stated:

> The former line of cases (*Diaz*) establishes that a disjunctive instruction, which allows the jury to find a defendant guilty if he commits either of two underlying acts, *either of which is in itself a separate offense*, is fatally ambiguous because it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense. The latter line (*Hartness*) establishes that if the trial court merely instructs the jury disjunctively as to various alternative acts *which will establish an element of the offense*, the requirement of unanimity is satisfied.

*Lyons*, 330 N.C. at 302-303, 412 S.E.2d at 312 (emphasis in original). Thus, the difference is whether the two underlying acts are separate offenses or whether they are merely alternative ways to establish a single offense. Applying this test, the Supreme Court held that the trial court erroneously "permitt[ed] consideration in one issue of two possible crimes for which defendant could be separately convicted and punished." *Id.* at 306, 412 S.E.2d at 314. The dissent would have us believe that the present matter falls within the above quoted language, but a complete examination of *Lyons* shows that it does not.

In *Lyons*, Justice Whichard went on to stress the importance of examining the gravamen of the offense which the legislature intended to prevent. In *Lyons*, it was held that the "gravamen

of the offense of maliciously assaulting in a secret manner is the assaulting of a particular individual in that manner." *Id.* at 307, 412 S.E.2d at 314. The gravamen of the offense in *Hartness* was not the conduct of the defendant, but his intent or purpose. *Id.* In the present matter, we find the gravamen of the offense of conspiracy to obtain property by false pretenses is not the conduct of Tim Almond, but his intent or purpose in attempting to obtain property by false pretenses, further showing the appropriateness of the *Hartness* line of cases to this situation.

Lastly, Justice Whichard examined the wording of N.C.G.S. § 14-31 to show that *Diaz* was appropriate. This section provides:

If any person shall in a secret manner maliciously commit an assault and battery with any deadly weapon upon another by waylaying or otherwise, with intent to kill such other person, notwithstanding the person so assaulted may have been conscious of the presence of his adversary, he shall be punished as a Class F felon.

N.C.G.S. § 14-31 (1986). The Supreme Court relied on the phrases "such other person" and "the person so assaulted" as "clearly indicative of legislative intent that to find a defendant guilty of this offense, the jury must find unanimously that he committed the assault on a particular individual." *Lyons*, 330 N.C. at 309, 412 S.E.2d at 315-16. No such similar language appears in the statute concerning obtaining property by false pretenses. Instead N.C.G.S. § 14-100 makes punishable any act by which a person obtains or attempts to obtain "money, goods, property, services, chose in action, or other thing of value with intent to cheat or defraud *any person* of such money, goods, property, services, chose in action or other thing of value." (Emphasis added). Unlike the offense in *Lyons*, N.C.G.S. § 14-100 uses the term "any person" instead of limiting the offense to a particular individual. This is further evidence that a unanimous verdict was required only as to the offense of conspiracy to obtain property by false pretenses and not to the persons with whom Tim Almond conspired.

Thus, after thoroughly reviewing the relevant case law we find this case more analogous to *Hartness*. Nowhere does the statute enumerate any specific activities which are separately punishable. Even though it is possible that the jurors could have disagreed as to whether or not Tim Almond conspired with John Minton, the jurors were at least unanimous that Tim Almond conspired

with Michael Almond and Jerry Minton to obtain money by false pretenses since these individuals were mentioned in both indictments. It does not matter that different companies were named in the indictments because conspiracy requires an agreement between two or more individuals to do an illegal act. *See State v. Massey*, 76 N.C. App. 660, 334 S.E.2d 71 (1985). It stands to reason that Tim Almond could not conspire with the companies named in the indictments but only with the individuals which represented those companies. This is exactly what the jury found in its verdict. Accordingly, we find this argument to be without merit.

[3] The third argument contends that the trial court erred in refusing to grant defendants' motion to dismiss at the close of all the evidence. We must determine whether or not there was substantial evidence of each element of the offense charged and of defendant being the perpetrator. *State v. Bates*, 309 N.C. 528, 308 S.E.2d 258 (1983). In making this determination, the evidence is considered in the light most favorable to the State, with the State receiving the benefit of every reasonable inference that can be drawn from the evidence. *State v. Cooley*, 47 N.C. App. 376, 268 S.E.2d 87, *disc. rev. denied*, 301 N.C. 96, 273 S.E.2d 442 (1980).

The elements of obtaining property by false pretenses have been defined as "(1) a false representation of a subsisting fact or future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another." *State v. Childers*, 80 N.C. App. 236, 242, 341 S.E.2d 760, 764, *disc. rev. denied*, 317 N.C. 337, 346 S.E.2d 142 (1986). Defendants assert that the trial court's refusal to grant their motion was error because the State failed to produce any evidence on the issue of misrepresentation. We disagree. In essence, defendants argue that since Michael Almond did not affirmatively say anything to his supervisors regarding the payment of invoices and the prices which he obtained, then he did not make any misrepresentations. This argument completely ignores Michael Almond's position as purchasing agent and his authority. In their brief, defendants state that Michael Almond was authorized to approve the payment of all expenses on behalf of CMC. Given this admission, we cannot see how the submission of invoices for goods not received would not amount to a misrepresentation. Further, representatives for CMC testified that as purchasing agent, Michael Almond was responsible for obtaining the best price possible. Thus, every time Michael Almond approved or

authorized an invoice to be paid he was making an implicit representation that he had obtained the best possible price and not one that was 20% above normal.

Michael Almond further argues that even if misrepresentations did occur then there was no causal relationship between the misrepresentations and his receipt of any moneys. In support of this argument Michael Almond cites *State v. Davis*, 48 N.C. App. 526, 269 S.E.2d 291, *disc. rev. denied*, 301 N.C. 237, 283 S.E.2d 134 (1980), wherein a town official falsified expenditure requests and obtained train tickets in return. In reversing the conviction, this Court held that the evidence was insufficient to show that the town official's misrepresentation had in any way induced the town to part with its money. In the case at hand we find sufficient evidence was produced to show that CMC would not have paid the inflated invoices but for Michael Almond's approval of such and it was CMC's payment of these inflated invoices which allowed Michael Almond to receive his kickback. We find no merit to defendants' argument.

[4]  In the fourth argument, Michael Almond asserts that indictments 90-CrS-6605 and 90-CrS-6600 are fatally defective and the trial court erred when it denied his motion to quash. Michael Almond contends that indictment 90-CrS-6605 is defective because it failed to allege the county in which the alleged activities took place as required by N.C.G.S. § 15A-924(a)(3). All of the indictments against Michael Almond were captioned as from Wilkes County. Further, all of the indictments against Michael Almond, save indictment 90-CrS-6605, contained the phrase "in the county named above" to incorporate by reference that the alleged activities had taken place in Wilkes County. Although, the name of the county was omitted from the body of the indictment, we find that sufficient information was contained in the indictment to confer jurisdiction upon the Wilkes County grand jury and to inform Michael Almond that the charges against him arose from activities in Wilkes County. Indictment 90-CrS-6605 alleged that Michael Almond obtained money from CMC by false pretenses. It is undisputed that CMC is located in Wilkes County and thus Michael Almond had full knowledge of the charges against him. Further, when all of the indictments are taken together, there is no question that the activities for which Michael Almond is charged took place within Wilkes County. We see no reason to quash indictment 90-CrS-6605 for the simple reason that an omission was made in typing the indictment.

Michael Almond also contends the trial court erred when it denied his motion to dismiss indictment 90-CrS-6600 because it failed to allege that Michael Almond "obtained or attempted to obtain anything of value." In support of this argument, Michael Almond cites *State v. Hadlock*, 34 N.C. App. 226, 237 S.E.2d 748 (1977), where this Court found an indictment insufficient when it failed to allege that the defendant obtained or attempted to obtain anything. The specific language of 90-CrS-6600 reads: "defendant named above, unlawfully, willfully and feloniously did knowingly and designedly with the intent to cheat and defraud obtain and attempt to obtain in United States money from Carolina Mirror Corporation. . . ." There is absolutely nothing ambiguous about this charge. We find that the above language was more than sufficient to give Michael Almond notice of the charge against him.

[5] Defendants next argue that the trial court erred in quashing a portion of their subpoena duces tecum. During early 1992, defendants served subpoenas on several of the officers and former employees of CMC requesting all invoices and delivery checks which CMC had from any of its suppliers from 1982 through 1990. Gary Vannoy, appearing in his capacity as private prosecutor and attorney for CMC, moved to quash the subpoenas as unduly burdensome and irrelevant. A hearing was held on the State's motion approximately two weeks prior to the trial date. Upon hearing arguments from both sides, the trial court determined that the subpoenas were really discovery devices and granted a protective order pursuant to N.C.G.S. § 15A-908. Defendants assert that this was error in that it denied them the opportunity to explore possible motives for their prosecution by CMC officials, as well as preventing them from having access to information which would show that CMC had paid inflated prices to other companies. We disagree.

It is clear that defendants did not follow the proper discovery procedures provided for in Chapter 15A. Thus, given the late date at which defendants served their subpoenas, we believe that the trial court was correct in characterizing the subpoenas as discovery devices intended to circumvent the normal discovery process. Therefore, given that the trial court has broad discretion to control discovery so as to prevent undue embarrassment and annoyance, we find that the trial court did not err. *See State v. Taylor*, 327 N.C. 147, 393 S.E.2d 801 (1990) (recognizing power of trial court to control extent and timing of disclosure of public defender's files).

**[6]** Defendants have also assigned as error the fact that the trial court held *ex parte* communications with the prosecutor while defense counsel was outside the courtroom. In support of this argument, defendants cite *State v. Smith*, 326 N.C. 792, 392 S.E.2d 362 (1990), for the proposition that a defendant has the right to be present at every stage of his prosecution and such right cannot be waived. However, our review of the case law reveals that this right may be waived except in capital cases. *See State v. Tate*, 294 N.C. 189, 239 S.E.2d 821 (1978) (failure to object to conversations at the bench between judge and jurors constitutes a waiver). The record reveals that defendants have raised their objection to the bench conference with the prosecutor for the first time on appeal. Thus we deem the objection as waived and defendants' assignment of error is overruled.

Defendants' last two assignments of error concern evidentiary rulings made by the trial court. Defendants assert that the trial court erred when it allowed employees of CMC to testify about the amount of business done by CMC because improper foundations were laid for the testimony and the testimony was hearsay. N.C.G.S. § 15A-1443(a) provides that a defendant is prejudiced by errors relating to rights other than under the Constitution when there is a reasonable possibility that had the error not been committed the jury would have reached a different result. The burden of proving this is on the defendant. After reviewing the record we find that the evidentiary issues to which defendants objected were only tangential and did not affect defendants' convictions. Accordingly we find no merit to defendants' last two assignments of error.

We find that defendants received a fair trial free from prejudicial error.

No error.

Judge EAGLES concurs.

Judge GREENE dissents.

Judge GREENE concurring in part and dissenting in part.

I agree with the majority, for the reasons given, that there was no error in defendant Michael A. Almond's trial. I believe, however, defendant Timothy Almond is entitled to a new trial

because of plain error committed in presenting only one conspiracy charge to the jury, but allowing the jury to convict on either of two conspiracy charges.

The defendant was indicted, in two separate indictments, on two counts of conspiracy. The first indictment, 90-CrS-6598, alleged that the defendant engaged in a conspiracy from November 1982 through November 1988, with "John Minton, Jerry Minton, doing business as Minton Electric, Michael A. Almond and others" to obtain money by false pretenses from Carolina Mirror Corporation and Carolina Mirror Company by invoicing Carolina Mirror inflated prices for goods sold to them by Minton Electric, the inflated profits then being split between the defendant and others. The second indictment, 90-CrS-6608, alleged that the defendant conspired with "Jerry Minton, doing business as Carolina Glue Chip, and Michael A. Almond and others" between October 1985 and April 1986 to obtain money by false pretenses from Carolina Mirror Corporation by inflating invoices for glass from Carolina Glue Chip by $.10 per square foot to create money to kickback to the defendant and others.

The indictments allege two separate conspiracies, involving different time frames, different actors, different victims, and different methods of committing the crime. During the trial, the jury heard evidence concerning both conspiracies. The verdict form given to the jury read as follows:

> We, the jury, unanimously find the defendant, Timothy Michael Almond,
>
> _____ Guilty of Conspiracy to Obtain Property by False Pretenses or;
>
> _____ Not Guilty

In its instructions to the jury, the trial court instructed on the general elements of conspiracy charging that the defendant should be found guilty if those elements were established by the evidence. This general instruction and the verdict form impermissibly permitted "consideration in one issue of two possible crimes for which defendant could be separately convicted and punished": (1) the conspiracy charged in the first indictment, and (2) the conspiracy charged in the second indictment. See State v. Lyons, 330 N.C. 298, 306-07, 412 S.E.2d 308, 314 (1991). Accordingly "the jury could have returned a verdict of guilty without all twelve jurors agreeing" on

which conspiracy the defendant was guilty. *Id.* Therefore the verdict is defective in that it violates defendant's constitutional right to be convicted by a unanimous jury. N.C. Const. art. I, § 24.

Contrary to the majority, I do not believe this case is controlled by *State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990). *Hartness* was a case "in which a single wrong [was] established by a finding of various alternative elements." *Id.* at 566, 391 S.E.2d at 180. *Hartness* therefore is not applicable to the present case because this defendant was charged with engaging in two separate conspiracies. *See State v. Diaz*, 317 N.C. 545, 554, 346 S.E.2d 488, 494 (1986) (in trial for transporting marijuana, jury charge which allowed jury to convict defendant if it found defendant knowingly possessed or knowingly transported marijuana held error because possession and transportation are separate crimes with separate punishments).