IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 23-839

Filed 17 September 2024

Wake County, Nos. 21 CRS 2400-03

STATE OF NORTH CAROLINA

v.

BRINDELL WILKINS, Defendant.

Appeal by Defendant from Judgments entered 8 December 2022 by Judge Paul Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 12 June 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Heidi M. Williams, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Michele Goldman, for Defendant-Appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

Brindell Wilkins (Defendant) appeals from Judgments entered pursuant to jury verdicts finding him guilty of six counts of Obtaining Property by False Pretenses and six counts of felony Obstruction of Justice. The Record before us tends to reflect the following:

In 2009 Defendant was appointed Sheriff of Granville County, and in 2010 he was elected to that office. Prior to this appointment, Defendant served in Granville

County as a deputy sheriff from 1989 through 1996, as an auxiliary officer from 1996 through 2001, and as chief deputy sheriff from 2001 until his appointment as Sheriff.

During his time as a deputy, Defendant received the certification required to hold that position. The North Carolina Sheriffs' Education and Training Standards Commission (the Commission) sets requirements for deputy sheriffs to become certified justice officers, while the North Carolina Sheriffs' Education and Training Standards Division (Division) operates as staff for the Commission, overseeing training and certification for justice officers. Requirements for deputy sheriffs include an initial 600-to-700-hour Basic Law Enforcement Training course.

After obtaining certification, justice officers must complete annual in-service training, which includes firearm requirements for officers authorized to carry firearms. Sheriffs' offices are required to submit a yearly report to the Division setting forth which of its justice officers completed annual training and, if applicable, whether they qualified to carry a firearm for that year. The Division then reviews the reports and audits the records for compliance with the Commission's standards.

As Sheriff, Defendant was not required to maintain certification or complete in-service training requirements. N.C. Gen. Stat. § 17E-11. However, he was still able to voluntarily complete training to maintain his certification if he so chose.

Between the years of 2013 and 2019, Defendant reported to the Division that he had satisfied completed voluntary in-service training and firearm qualification classes. However, a 2019 investigation of the Granville County Sheriff's Office

revealed that Defendant's signatures on training class rosters appeared to be falsified. His firearms requalification scores were not posted with those of the deputy sheriffs, and deputy sheriffs later testified at trial that Defendant had not participated in in-service training or firearms training and requalification with them. Defendant was charged with six counts each of Obtaining Property by False Pretenses and Obstruction of Justice.

At trial, Defendant admitted that he had not completed in-service training or firearms training and requalification since becoming Sheriff. He testified he submitted the false records for "a personal reason" and that he "wanted to get credit for it."

Defendant moved to dismiss all charges and the trial court denied his Motion. The jury found Defendant guilty on all twelve counts. The trial court sentenced Defendant to six to seventeen months' imprisonment, with an additional suspended sentence of the same length. Defendant gave oral Notice of Appeal.

## Issue

The issues on appeal are whether the trial court (I) erred in denying Defendant's Motion to Dismiss the charges of Obtaining Property by False Pretenses; and (II) erred in denying Defendant's Motion to Dismiss the charges of Obstruction of Justice.

## Analysis

We review the trial court's denial of a motion to dismiss *de novo,* substituting our judgment freely for that of the trial court. *State v. Walker*, 286 N.C. App. 438, 441, 880 S.E.2d 731, 735 (2022). "When a defendant moves for dismissal, the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense." *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). If so, the motion is properly denied. *Id.* at 66, 296 N.C. at 651-52.

"In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994). "Only defendant's evidence which does not contradict and is not inconsistent with the state's evidence may be considered favorable to defendant if it explains or clarifies the state's evidence or rebuts inferences favorable to the state." *State v. Sumpter*, 318 N.C. 102, 107-08, 347 S.E.2d 396, 399 (1986).

I. Obtaining Property by False Pretenses

To convict Defendant of Obtaining Property by False Pretenses (OPFP), the State must provide evidence of "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value

from another." *State v. Cronin*, 299 N.C. 229, 242, 262 S.E.2d 277, 286 (1980); N.C. Gen. Stat. § 14-100 (2023). Defendant argues that the State has failed to prove the final element because the certification was already in his possession when he filed the false reports and renewing a certification does not constitute "obtaining" it as required by the statute. We agree.

To convict for OPFP, "[t]here must be a causal relationship between the representation alleged to have been made and the *obtaining* of the money or property." *State v. Davis*, 48 N.C. App. 526, 531, 269 S.E.2d 291, 294-95 (1980) (emphasis added). Thus, Defendant's argument—that he did not obtain anything because of his misrepresentation but only maintained possession of a certification obtained prior—depends on whether renewal of a license or certification constitutes obtaining property within the meaning of the statute.

We addressed a similar question in *State v. Mathis,* 261 N.C. App. 263, 819 S.E.2d 627 (2018). There, the defendant was a bail bondsman charged with OPFP for renewing his bondsman's license after submitting reports that misrepresented the bonds he had issued. *Id.* at 267, 819 S.E.2d at 631. Renewal allowed him to keep the license for another year. *Id.* As in this case, the defendant argued that he had not obtained anything of value because he already had a license prior to the misrepresentation. *Id.* at 281, 819 S.E.2d at 639-40. We agreed and rejected the State's argument that retaining the bondsman's license fell within the definition of "obtaining" as used in the OPFP statute, holding that "retain is not within the

definition of obtain" and that a renewal could not constitute obtaining for the purposes of the statute. *Id.* We noted that the Department of Insurance had different processes and requirements for obtaining a bondsman's license and renewing or retaining one. *Id.* We also noted that the rule of lenity, which requires us to strictly construe criminal statutes and resolve ambiguities in favor of defendants, supported our holding. *Id; State v. Hinton*, 361 N.C. 207, 211, 639 S.E.2d 437, 440 (2007).

Defendant argues that, similarly to *Mathis*, his false pretense led only to retaining the certification he first obtained while working as a deputy and there is therefore no causal connection between his misrepresentation and *obtaining* the certification. We agree. Here, the indictment alleged Defendant obtained "continued law enforcement certification." Applying *Mathis*, we conclude that renewing a previously acquired law enforcement certification does not constitute obtaining property. As with the bondsman's license at issue in that case, the process for obtaining and renewing law enforcement certification differs considerably, with initial obtainment requiring completion of the Basic Law Enforcement Training course. The evidence showed Defendant did not obtain a new certification but retained a previously issued one, and to "retain is not within the definition of obtain." *Id.* at 282, 819 S.E.2d at 640. Because Defendant must have obtained property to be charged with OPFP, we conclude the trial court erred in denying his motion to dismiss.

The State attempts to distinguish *Mathis,* arguing that our decision in that case rested on an error in the indictment. The indictment in *Mathis* alleged the defendant "obtain[ed] . . . a Professional Bail Bondsman's License" that the parties agreed had, in fact, been in his possession prior to his alleged acts. *Id.* at 282, 819 S.E.2d at 640. It was only on appeal at oral argument that the State introduced the argument that "retaining wrongfully is obtaining" and that "obtaining a renewal" may constitute "obtaining." *Id.* at 282, 819 S.E.2d at 640. We declined to engage with this argument because it was inconsistent with the indictment, which did not allege the defendant had "obtained a renewal." *Id.* ("Additionally, the State's assertion at oral argument—Defendant obtained a renewal—is not what the State alleged in the indictment.").

In this case, the indictment alleges that Defendant obtained "continued law enforcement certification." While this phrasing is slightly different from the indictment in *Mathis*, it does not change the facts of this case: that Defendant obtained his certification prior to making any misrepresentation, and his false pretenses led only to a retention of certification. Under *Mathis*, this is not obtaining property within the meaning of the statute and Defendant could not be convicted of OPFP. *Id.* at 283, 819 S.E.2d at 640 ("The State also contended obtaining a renewal may be obtaining. We disagree."). The trial court erred by denying his Motion to Dismiss the charges of Obtaining Property by False Pretenses.

II. Obstruction of Justice

To prove the offense of common law obstruction of justice, the State must show Defendant: "(1) unlawfully and willfully; (2) obstructed justice; (3) with deceit and intent to defraud." *State v. Cousin*, 233 N.C. App. 523, 537, 757 S.E.2d 332, 342-43 (2014). "[A]ny action intentionally undertaken by the defendant for the purpose of obstructing, impeding, or hindering the plaintiff's ability to seek and obtain a legal remedy will suffice to support a claim for common law obstruction of justice." *Blackburn v. Carbone*, 208 N.C. App. 519, 703 S.E.2d 788 (2010). An obstructive act is "one that is done for the purpose of hindering or impeding a judicial or official proceeding or investigation or potential investigation, which might lead to a judicial or official proceeding." *State v. Coffey*, __ N.C. App. __, 898 S.E.2d 359, 364, *disc. review denied* __ N.C. __, 901 S.E.2d 796 (2024).

We do not reach Defendant's arguments as to the sufficiency of evidence supporting his conviction for obstruction of justice because the indictments are facially invalid as to this charge. Because a facially invalid indictment fails to confer subject matter jurisdiction on the trial court, its validity may be challenged at any time and a conviction based on an invalid indictment must be vacated. *State v. Perkins*, 286 N.C. App. 495, 502, 881 S.E.2d 842, 849 (2022). "It is well-established that the issue of a court's jurisdiction over a matter may be raised at any time, even

for the first time on appeal or by a court *sua sponte.*" *State v. Webber,* 190 N.C. App. 649, 650, 660 S.E.2d 621, 622 (2008).[1]

An indictment must include "[a] plain and concise factual statement in each count, which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation." N.C. Gen. Stat. § 15A-924(a)(5) (2023). Defendant argues the State failed to allege obstruction because the indictment asserts no facts showing Defendant's actions were done to subvert a potential investigation or legal proceeding. The indictment alleged Defendant:

> unlawfully, willfully and feloniously with deceit and intent to defraud, did commit the infamous offense of obstruction of justice by knowingly providing false and misleading information in training records indicating he had completed mandatory in-service training and annual firearm qualification where he had not completed it, and knowing that these records and/or the information contained in these records would be and were submitted to the North Carolina Sheriffs' Education and Training Standards Division thereby allowing defendant to maintain his law enforcement certification when he had failed to meet the mandated requirements.

---

[1] Defendant has filed with this Court a Motion for Appropriate Relief requesting that we address the error in the indictment in light of *Coffey*. Because errors in the indictment are jurisdictional in nature and may be raised at any time, including *sua sponte*, we elect to address this issue in this opinion and dismiss Defendant's Motion as moot.

This indictment is materially identical to that at issue in the related case of *State v. Coffey*, __ N.C. App. __, 898 S.E.2d 359, 364, *disc. review denied* __ N.C. __, 901 S.E.2d 796 (2024). There, the defendant certified our present Defendant's falsified attendance and firearms records. *Id.* at 360-61. The indictment alleged he acted "for the purpose of allowing Sheriff Wilkins and Chief Deputy Boyd to maintain their law enforcement certification when he had failed to meet the mandated requirements." *Id.* at 365. However, it did not allege that he acted with intent to obstruct an investigation or judicial proceeding. This raised the question of what constitutes an "act which prevents, obstructs, impedes or hinders public or legal justice." *Id.* at 363; *In re Kivett,* 309 N.C. 635, 670, 309 S.E. 2d 442, 462 (1983) (defining common law obstruction of justice).

We observed that, under our precedent, an act that obstructs justice must be one that is "done for the purpose of hindering or impeding a judicial or official proceeding or investigation or potential investigation, which might lead to a judicial or official proceeding." *Id.* at 364. When the indictment fails to allege that the acts were intended to interfere with an investigation or proceeding, it fails to allege facts supporting an element of the offense. *Id.* at 365. The indictments in *Coffey*, as in this case, alleged the defendant "willfully and knowingly provided false and misleading information in training records knowing those records would be submitted to [the Division.]" *Id.* However, there was no indication in the indictment that the defendant had acted to hinder any investigation by the Division or to impair their ability to seek

relief against the involved parties: "While these alleged actions are wrongful, there are no facts asserted in the indictment to support the assertion Defendant's actions were done to subvert a potential subsequent investigation or legal proceeding." *Id.* Instead, the indictments alleged his actions were "done for the sole purpose of allowing his supervisors to maintain their certifications." *Id.*

Defendant's nearly identical indictment likewise asserts only that his submission of falsified records was done for the purpose of maintaining his certification despite failing to meet the requirements. It does not allege that his wrongful acts were done to subvert a potential investigation or legal proceeding, and therefore fails to allege he performed an act which "prevents, obstructs, impedes or hinders public or legal justice." Kivett, 309 N.C. at 670, 309 S.E.2d at 463; N.C. Gen. Stat. § 15A-924(a)(5) (2023). The indictment therefore fails entirely to charge Defendant with a criminal offense.[2]

Thus, here, the indictments were insufficient by failing to allege the crime of common law obstruction of justice. Therefore, the indictments were fatally defective. Consequently, the trial court erred in denying Defendant's Motion to Dismiss because

---

[2] We note that our Supreme Court has recently held that "an indictment raises jurisdictional concerns only when it wholly fails to charge a crime against the laws or people of this State." *State v. Singleton*, 386 N.C. 183, 184-85, 900 S.E.2d 802, 805 (2024). A "mere pleading deficiency" does not deprive our courts of jurisdiction. *Id.* at 215, 900 S.E.2d at 824. The indictment in this case does not allege conduct that could be understood to constitute common law obstruction of justice and therefore fails entirely to allege a criminal act, creating a jurisdictional defect. We additionally observe that the Supreme Court denied discretionary review in *Coffey* subsequent to its opinion in *Singleton*. 901 S.E.2d 796. *Coffey* remains binding precedent upon this Court.

the indictments as to Obstruction of Justice were defective and the trial court lacked subject matter jurisdiction to enter judgment thereon.[3]

## Conclusion

Accordingly, for the foregoing reasons, we reverse the ruling of the trial court as to Defendant's Motion to Dismiss the charges of Obtaining Property by False Pretenses and vacate the trial court's Judgments as to Defendant's convictions of common law Obstruction of Justice.

REVERSED IN PART; VACATED IN PART

Judges MURPHY and WOOD concur.

---

[3] It must be noted that the trial court did not have the benefit of our decision in *Coffey*.