DAVIS, Circuit Judge,
concurring:
I am pleased to join Judge King’s fine opinion in full. He demonstrates that without doubt the correct approach in this case (and to the North Carolina indecent liberties statute generally) is the categorical approach and not the modified categorical approach. I write separately to offer the following additional observations.
I.
I admire the thoughtful efforts of my authoring colleagues to rationalize the challenging legal standards confronting us. As I understand the opinions that contend the modified categorical approach applies in this case, three distinct constructs seem to be put forward: (1) the presumed legislative intent underlying the ACCA (Op. of Wilkinson, J.); (2) the supposed existence of a “categorically violent” subsection within the overall “nongeneric” indecent liberties statute (Op. of Keenan, J.); and (3) the assertion that the indecent liberties statute contains two “substantive” “generic” indecent liberties offenses, the “more violent” of which poses, as a matter of law in all instances, a “serious potential risk of physical injury” under the residual clause of the ACCA (Op. of Niemeyer, J.). With genuine respect for my colleagues’ differing views, I believe for the following reasons that each of these constructs is infirm.
A.
Judge Wilkinson seems forthrightly to acknowledge that the North Carolina appellate courts have always treated the two discrete subsections of the indecent liberties statute interchangeably and in ways that, as Judge King shows, render it impossible, as a matter of logic or legal analysis, to differentiate among the two subsections as a categorical matter. In other words, viewed pragmatically, there are no discrete “categories” of offense behaviors from which to “choose.” See ante at 778-79 (Op. of King, J.). Thus, Judge Wilkinson effectively agrees with Judge King that as the indecent liberties statute has been interpreted and applied, no matter the acts committed by a particular defendant, that defendant is categorically amenable to prosecution under both subsection (a)(1) or subsection (a)(2) of the statute. Any plausible determination of a “risk of injury” within the contemplation of the ACCA residual clause is not driven by which statutory subsection a prosecutor invokes. The published opinions of the North Carolina appellate courts demonstrate that the state’s prosecutors regularly take advantage of the generous prosecutorial discretion afforded by the indecent *789 liberties statute. See ante at 783 (Op. of King, J.).
Nevertheless, although Judge Wilkinson seemingly eschews the contention that based on its “alternative elements” the indecent liberties statute can be treated as if it proscribed two categories of offense behaviors, he concludes that Congress should be deemed to have intended that offenders who have been convicted of what amounts to physical sexual assaults under the indecent liberties statute against minors should receive enhanced sentences when and if they are later convicted in federal court for a violation of 18 U.S.C. § 922(g)(1).
The difficulty with Judge Wilkinson’s presumed-legislative-intent construct, of course, is that there is neither evidence nor established legal principle to support it. If we know nothing else about Congress, we know that Congress understands fully how to punish repeat wrongdoers who pose a danger to the community. Cfi 21 U.S.C. § 851 (2006). Congress did not list “sexual assault of a child” along with “burglary,” “arson,” “extortion,” and “explosives offenses” as one of the enumerated offenses it included in the ACCA sentencing enhancement, although it has done so elsewhere. See infra n. 1 (discussing application notes to U.S.S.G. § 2L1.2(b)(l)(A)). It could do so tomorrow if it wished.
Moreover, Judge Wilkinson acknowledges, in agreement with Judge King, that other provisions of North Carolina law cover a myriad of despicable, heinous acts of physical sexual depredation committed against adults as well as children. See ante at 781 n. 4 (Op. of King, J.); see also N.C. Gen.Stat. Ch. 14, Subch. Ill, Art. 7A (“Rape and Other Sex Offenses”). There can be little doubt that such offenses will inevitably be captured by the ACCA residual clause as creating “a serious potential risk of physical injury to victims” (if not the more likely “use of physical force” clause). It is not easy to discern the need for a judicially-created supplement to Congress’s (admittedly less than optimal) statutory design.
But Judge Wilkinson defends his conclusion as based on his belief that federalism concerns require federal judges to step in to fill gaps in the law left by the drafting decisions of state legislators, charging decisions of state prosecutors, and the lawmaking decisions of Congress itself. See post at 805 (“Other defendants [prosecuted and convicted solely under the indecent liberties statute] have been convicted of more serious forms of sexual assault, see, e.g., State v. Askew, 183 N.C.App. 156, 643 S.E.2d 678 (N.C.Ct.App.2007)....”) (Op. of Wilkinson, J.).[1] This notion is troubling.
*790 With respect, Judge Wilkinson’s argument in favor of application of the modified categorical approach in this case seems to me to rely heavily on a novel notion of federalism. All agree that federalism interests inform our work in cases such as this one. Nevertheless, I do not believe it was the purpose of Congress in enacting the ACCA “to punish particular types of crimes — serious drug offenses and violent felonies.” Post at 802 (Op. of Wilkinson, J.). Rather, as the plain text of the statute reveals, the purpose of the ACCA is to increase punishments for certain federal offenders who unlawfully possess a firearm.
Nor are Article III judges the roving protectors of all children, from every conceivable harm, encountered everywhere. Rather, that role is quintessentially a police power retained by the individual sovereign states of our union. It would be wise not to confuse the important law-making tasks committed by our constitutional structure to the legislature of North Carolina (as implemented by its Executive Branch officials, including its prosecuting authorities) with the adjudicative tasks committed to federal judges. Judge Wilkinson’s approach poses more questions than it answers.
B.
In contrast to Judge Wilkinson’s “implied-legislative-intent/gap-filing” approach, Judge Keenan seems to rely on what might be described as a “blank slate” approach. Cf. ante at 782 (Op. of King, J.) (“If we were writing on a blank slate, I might conclude that a violation of subsection (a)(1) is a less serious offense that does not require physical contact with the minor victim, while a violation of subsection (a)(2) is a more serious offense that requires some form of physical contact — a lewd or lascivious act upon the body of a child.”). Judge Keenan readily concedes that, under the circumstances presented here, she does not accept as authoritative the North Carolina appellate courts’ repeated admonitions that the indecent liberties statute consists of “five fixed elements.” Post at 800 n. 1 (Op. of Keenan, J.). Rather, Judge Keenan seizes upon the patently ambiguous statement in State *791 v. Hartness, 326 N.C. 561, 391 S.E.2d 177 (1990), that the indecent liberties statute consists of “alternative elements.” See id. (citing Hartness, 391 S.E.2d at 180). She then examines the “plain language” of the statute, as if undertaking to analyze it for the first time, and concludes, like the Hartness court did, that the statute contains “alternative elements.” Unlike Hartness, however, Judge Keenan is convinced that those “alternative elements” are nicely aligned in two structural subsections.
There are several unresolved difficulties with this approach. First, as Judge Keenan acknowledges, we are not free to reject the state courts’ clear instruction as to the elements of the statute. To the extent, therefore, that Judge Keenan’s rejection of the statutory elements is implicitly based on the conclusion that the “fixed elements” identified by North Carolina’s courts are limited to subsection (a)(1) only, her approach is fundamentally flawed. There is no evidence that the elements are so limited, and, more importantly, there is overwhelming evidence that this is not so.
As Judge King correctly explains, the North Carolina Supreme Court and the North Carolina Court of Appeals have been unfailingly consistent in their identification of the elements of the indecent liberties statute:
(1) the defendant was at least 16 years of age; (2) he was five years older than his victim; (3) he willfully took or attempted to take an indecent liberty with the victim; (4) the victim was under 16 years of age at the time the alleged act or attempted act occurred; and (5) the action by the defendant was for the purpose of arousing or gratifying sexual desire.
State v. Rhodes, 321 N.C. 102, 361 S.E.2d 578, 579 (1987); State v. Thaggard, 168 N.C.App. 263, 608 S.E.2d 774, 786-87 (2005); State v. Khouri, No. COA10-1030, — N.CApp. -, 716 S.E.2d 1, 5-6, 2011 WL 3569504, at *4 (N.C.CtApp. Aug. 16, 2011). Furthermore, in our nonprecedential per curiam opinion in United States v. Fernando, 291 Fed.Appx. 494 (4th Cir.2008), we specifically identified the elements of the North Carolina indecent liberties statute as the five discrete elements listed above. 291 Fed.Appx. at 495 n. 2 (citing Thaggard, 608 S.E.2d at 786-87).[2]
To be sure, no one reading the North Carolina indecent liberties statute could deny that it plainly criminalizes “lewd and lascivious acts upon or with the body of a child.” But, as Judge King persuasively demonstrates, the better view is that the statutory provision, properly understood, cannot reasonably support application of the modified categorical approach in this ease.[3]
*792 The genealogy of the indecent liberties statute is instructive. The statute was enacted by the state legislature in 1955 and became effective on or about April 29, 1955. As originally enacted, the statute read as follows:
Section 1. Any person over 16 years of age who, with intent to commit an unnatural sexual act, shall take, or attempt to take, any immoral, improper, or indecent liberties with any child of either sex, under the age of 16 years, or who shall, with such intent, commit, or attempt to commit, any lewd or lascivious act upon or with the body, or any part or member thereof, of such child, shall, for the first offense, be guilty of a misdemeanor and for a second or subsequent offense shall be guilty of a felony, and shall be fined or imprisoned in the discretion of the court. Sec. 2. All laws and clauses of laws in conflict with this Act are hereby repealed.
An Act to Provide for the Protection of Children from Sexual Psychopaths and Perverts, ch. 764, 1955 N.C. Sess. Laws 708, 708 (amended 1975).
Early on, defendants argued that the enactment of the statute effected an implied repeal of the existing North Carolina statute prohibiting crimes against nature, N.C. Gen.Stat. § 14-177. See, e.g., State v. Harward, 264 N.C. 746, 142 S.E.2d 691 (1965); State v. Lance, 244 N.C. 455, 94 S.E.2d 335 (1956). The North Carolina Supreme Court flatly rejected that contention. See Harward, 142 S.E.2d at 694 (rejecting defendant’s contention that passage of N.C. Gen.Stat. § 14-202.1 impliedly repealed the offense of attempt to commit a “crime against nature” or reduced it from a felony to a misdemeanor); Lance, 94 S.E.2d at 339 (holding that the offense of “crime against nature” was not impliedly repealed by N.C. Gen.Stat. § 14-202.1 insofar as the former concerns the commission of a “crime against nature” when the defendant is over sixteen years of age and the child is under sixteen years of age).
In rejecting this contention, the North Carolina Supreme Court explained that N.C. Gen.Stat. § 14-177 condemns “crimes against nature,” including acts with animals and acts between humans whether committed against children or adults, while the indecent liberties statute, N.C. Gen. Stat. § 14-202.1, condemns offenses of an “unnatural” sexual nature against children under sixteen years of age by those over sixteen years of age that could not “be reached and punished” under the “crime against nature” statute, as well as “other acts against children than unnatural sex acts.” Lance, 94 S.E.2d at 339; Harward, 142 S.E.2d at 691-92. In drawing its conclusion that the legislative intent in passing N.C. Gen.Stat. § 14-202.1 was to supplement the “crime against nature” statute and to give broader protection to children, the Supreme Court relied on “The Law of Crime Against Nature,” an article that called for a law covering “the entire subject of unnatural intercourse” and drafted a proposed statute, which incorporated a child molestation provision from a District *793 of Columbia statute treating indecent liberties with a minor. Harward, 142 S.E.2d at 694; James R. Spence, The Law of Crime Against Nature, 82 N.C.L.Rev. 313, 323-24 (1954) (citing D.C.Code Ann. § 22-3501 (1951)). The Supreme Court explained that it was “reasonable to infer that the [North Carolina] General Assembly fully considered the recommendations made” by the article in passing the North Carolina indecent liberties statute. Harward, 142 S.E.2d at 694. Notably, the District of Columbia statute, on which N.C. Gen.Stat. § 14-202.1 was modeled, contained elements wholly consistent with the contemporary elements of the North Carolina indecent liberties statute. See Allison v. United States, 409 F.2d 445, 451 (D.C.Cir.1969) (listing “(1) taking immoral, improper, or indecent liberties with (2) a child under the age of 16, (3) with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of the child or of the accused” as the elements of the indecent liberties with a minor child offense).
As mentioned, the original North Carolina indecent liberties statute consisted of a single statutory provision without subsections. See N.C. Gen.Stat. § 14-202.1 (Replacement 1969). Indeed, the legislature did not create what are now separate subsections (a)(1) and (a)(2) until 1975, twenty years after the enactment of the statute. See An Act to Amend G.S. 14-202.1, 1975 N.C. Sess. Laws 1105. This amendment also removed the requirement of intent to commit an unnatural sexual act and increased the punishment, making the offense a felony rather than a misdemeanor. 1975 N.C. Sess. Laws 1105; State v. Banks, 322 N.C. 753, 370 S.E.2d 398, 407 (1988). But, the Supreme Court of North Carolina noted when considering the 1975 change to the statute, “[t]he substantive features of the statute have remained unchanged since this rewrite.” Banks, 370 S.E.2d at 407 (explaining what the State must prove under (a)(1) and (a)(2) to sustain a conviction under the indecent liberties statute).
The gist of this historical account is that the essential elements of the North Carolina indecent liberties statute are today what they have always been. See Rivers v. Roadway Express, Inc., 511 U.S. 298, 312-13, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994) (“A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.”) (cited in United States v. Baxter, 642 F.3d 475, 478 n. 3 (4th Cir.2011) (holding that, under the modified categorical approach to the ACCA, the Virginia Supreme Court’s authoritative interpretation of the state burglary statute in 1985 applied to the defendant’s 1976 burglary conviction, where the defendant was sentenced in federal court in 2010 for violation of 18 U.S.C. § 922(g)(1))).
Thus, the fundamental difficulty I perceive in Judge Keenan’s effort lies in its promotion of the interchangeable use of the terms “elements [of the indecent liberties statute],” “behaviors,” “acts,” “means,” and “theories.”[4]
*794 For me, the upshot is that it simply is not true that “the statute is composed of alternative elements” in the manner in which Judge Keenan (and Judge Niemeyer) insist; the elements are the five that the state courts say they are. For the reasons explained by Judge King, what is surely true is that proof of an offense proscribed by the statute can be sustained by evidence showing beyond a reasonable doubt that the defendant committed one or more “alternative acts,” engaged in “alternative behaviors,” or that the defendant violated the statute by “alternative means,” any one or more of which might satisfy the third element of the statutory offense (i.e., that “he willfully took or attempted to take an indecent liberty with the victim”), but not one of which is necessarily required to be an act (or attempted act) “upon” or “with” “the body of,” or “a part or a member of,” a child, let alone a forceful or violent act inevitably leading to the infliction of, or inherently posing a “risk of physical injury ” as required by the residual clause of the ACCA. One might also say that a prosecutor is authorized to proceed against a culpable defendant on “alternative theories,” which one federal court appellant has argued could number as many as 16.[5]
*795 Notably, the very statutory terms which Judge Keenan identifies as “alternative elements” of the indecent liberties offense are elastic in the extreme. Specifically, as to Judge Keenan’s suppositions regarding subsection (a)(2) of the indecent liberties statute, the supposedly discrete elements of “lewd” and “lascivious” harken back to the venerable legal redundancies of old, see, e.g., “null and void,” and “cease and desist,” and provide scant reason to deviate from clear holdings of the state courts as to the “elements and character” of the indecent liberties statute and the clear command of our Supreme Court that we apply a categorical approach under the ACCA.
In fact, in construing the indecent liberties statute, at least one North Carolina appellate court has defined the word “lewd” “broadly” as, among other things, “lascivious.” State v. Manley, 95 N.C.App. 213, 381 S.E.2d 900, 902 (1989) (citing Webster’s Third New International Dictionary at 1301 (1968)), disc, review denied, 325-N.C. 712, 388 S.E.2d 467 (1989). Such circularity of meaning is not entirely surprising under the circumstances. Moreover, the trial judge has no duty under North Carolina law even to define the essential terms in the indecent liberties statute for the jury. See State v. Stell, 39 N.C.App. 75, 249 S.E.2d 480 (1978); State v. Jenkins, 35 N.C.App. 758, 242 S.E.2d 505, 506-07 (1978), disc. review denied, 295 N.C. 470, 246 S.E.2d 11 (1978); State v. Withers, 2 N.C.App. 201, 162 S.E.2d 638 (1968). The kind of unguided jury fact-finding fostered by historical practice under the North Carolina indecent liberties statute, an “all things to all people” approach to criminal adjudication, presents a poor candidate for application of the modified categorical approach under the residual clause of the ACCA.
For all these reasons, with sincere respect for Judge Keenan’s effort, I am unconvinced that the case has been made for the application of the modified categorical approach here.
*796 C.
Judge Niemeyer’s dissenting opinion contends that the modified categorical approach applies but, unlike Judge Keenan’s concurring opinion, it would find that “North Carolina’s indecent liberties statute contains at least two separate generic offenses for ACCA purposes.” Post at 807 (Op. of Niemeyer, J.). What has already been said regarding Judge Keenan’s approach identifies the difficulties with Judge Niemeyer’s approach. Furthermore, to say, as does the dissent, “whether Vann’s guilty pleas establish that he was convicted of the more violent of the two offenses set forth in N.C. Gen.Stat. § 14-202.1, as stated in subsection (a)(2),” post at 811 (Op. of Niemeyer, J.) (emphasis added), is question-begging of the most regrettable sort. There is no Supreme Court authority for surgery on a state statute to discover which of two statutory subsections is the “more violent,”[6] when that statute has been authoritatively interpreted by the state supreme court as not having as an element a perpetrator’s use of violence or force. Indeed, our dissenting colleague actually identifies the very rule regarding the elements of the offense applied by Judge King. See post at 815-16 n. 4 (Op. of Niemeyer, J.) (quoting State v. Jones, 172 N.C.App. 308, 616 S.E.2d 15, 20 (1990), for the proposition that the statute “states disjunctively two alternative means of proving one element of the offense”). In any event, to the extent that the dissent equates a “lewd and lascivious act upon or with the body or any part or member of the body of any child” under the North Carolina indecent liberties statute with a “sexual act” or a “sexual assault,” it plainly deviates from clear North Carolina law. Manley, 381 S.E.2d at 902 (observing that “a ‘lewd or lascivious act’ is not necessarily a ‘sexual act’ ”). Resort to ostensible analogues of the North Carolina indecent liberties act from the Model Penal Code does not change this result. See post at 814-15 (Op. of Niemeyer, J.).
D.
Despite my good colleagues’ heroic struggles to apply faithfully their understanding of the law in this difficult area, I find their efforts wanting. So far as I can discern, with perhaps one or two exceptions, every one of the more than 25 federal courts that have examined how the North Carolina indecent liberties statute should be assessed and applied in varying sentence enhancement contexts have applied the categorical approach, as does *797 Judge King. See supra n. 1; see also United States v. Baza-Martinez, 464 F.3d 1010 (9th Cir.2006) (applying the categorical approach in an illegal reentry case and finding that violation of North Carolina’s statute was not categorically a crime of violence under the child sexual abuse provision of U.S.S.G. § 2L1.2(b)(1)(A)(ii)); United States v. Witscher, 2011 WL 2261022 (W.D.Pa. June 8, 2011) (finding North Carolina indecent liberties conviction was not a “crime of violence” as “sexual abuse of a minor” under the “Career Offender” guideline, U.S.S.G. § 4B1.1). And, of course, we did likewise in our now superseded decision, United States v. Pierce, 278 F.3d 282 (4th Cir.2002) (construing the “Career Offender” guideline, U.S. S.G. § 4B1.1).[7] I regret the en banc court’s refusal to adopt the sound analysis reflected in those cases.
II.
For all that one might say in critiquing the Supreme Court’s “weaving of] intricate webs of doctrine” in its ACCA jurisprudence, post at 801 (Op. of Wilkinson, J.), one thing is certain: we are not to concern ourselves with the manner or means by which a generic crime was committed in a particular instance. Ante at 778-79 (Op. of King, J.) (“Like the categorical approach, however, the modified categorical approach does not authorize a sentencing court to use Shepard-approved documents to consider the particular acts underlying the previous conviction.” (citing Chambers, 129 S.Ct. at 690)). In the case at bar, I fear that the proponents of the modified categorical approach fall into an easily avoidable trap by insisting that, despite the controlling state court precedents to the contrary, subsection (a)(2) of the indecent liberties statute can be disaggregated from the statute as a whole and treated as a separate offense characterized by the perpetrator’s use of force against child victims in all its iterations, such that a “serious potential risk of physical injury” is inherent in their commission.
At the end of the day, it may well be that Justice Scalia is right: that the residual clause of the Armed Career Criminal Act is unconstitutionally vague.[8] This business of adjudicating “levels of risk” by “intuition” is problematic, to say the least. See Chambers, 129 S.Ct. at 692 (“[T]he study strongly supports the intuitive belief that failure to report does not involve a serious potential risk of physical injury.” (emphasis added)); Sykes, 131 S.Ct. at 2291 (Kagan, J., dissenting) (“But the majority’s intuition that dangerous flights outstrip mere failures to stop — that the aggravated form of the activity is also the ordinary form — seems consistent with common sense and experience.” (emphasis *798 added)).[9] But until Justice Scalia persuades at least four of his colleagues of the correctness of his view, we lower court judges owe fealty to the Supreme Court’s teaching on how we are to implement Congress’s less-than-erystal-clear design.
Judge King’s analysis manifests that fealty and I am pleased to join his opinion.

. Judge Wilkinson’s gap-filling approach effectively collapses the distinct but open-ended requirements of the residual clause of the ACCA, on the one hand, and the more refined requirements of the Sentencing Guidelines, on the other hand. See, e.g., United States v. Ramirez-Garcia, 646 F.3d 778 (11th Cir.2011). In Ramirez-Garcia, the same North Carolina indecent liberties statute before us was before the Eleventh Circuit. Id. at 779. The issue presented was whether a violation of the indecent liberties statute "constituted ‘sexual abuse of a minor’ and, thus, was a 'crime of violence' pursuant to the Sentencing Guidelines.” Id. The applicable guideline, § 2L1.2(b)(1)(A), increased the base offense level for a violation of the illegal reentry statute, 8 U.S.C. § 1326(a) and (b)(2), if the defendant had a prior conviction for a "crime of violence.” Id. at 781 & n. 1. The application notes to U.S.S.G. § 2L1.2(b)(1)(A) defined a crime of violence to include “sexual abuse of a minor.” Id. at 781 & n. 2. Rejecting the modified categorical approach in favor of the categorical approach, the Eleventh Circuit held that a violation of the North Carolina indecent liberties statute indeed constituted "sexual abuse of a minor.” Critical to its holding, the court relied on its precedents that "sexual abuse of a minor” is evidenced by " 'a perpetrator's physical or nonphysical misuse or maltreatment of a minor for a purpose associated with sexual gratification.’ ” *790 Id. at 782 (quoting United States v. Padilla-Reyes, 247 F.3d 1158, 1163 (11th Cir.2001)). In particular, the court "noted that the plain meaning of ‘abuse’ includes ‘acts that involve physical contact between the perpetrator and the victim and acts that do not.' " Id.; accord United States v. Izaguirre-Flores, 405 F.3d 270, 271 (5th Cir.2005) (per curiam) (holding that a violation of the North Carolina indecent liberties statute constituted "sexual abuse of a minor" under U.S.S.G. § 2L1.2(b)(1)(A)); United States v. Salas, 372 Fed.Appx. 355 (4th Cir.2010) (per curiam) (unpublished) (same); see United States v. Gonzalez-Michel, 112 Fed.Appx. 261, 262 (4th Cir.2004) (per curiam) (unpublished) (noting defendant did not contend that a conviction under the North Carolina indecent liberties statute did not constitute "sexual abuse of a minor”); see also Bahar v. Ashcroft, 264 F.3d 1309, 1311, 1313 (11th Cir.2001) (holding that term "sexual abuse of a minor,” as used in 8 U.S.C. § 1101(a)(43)(A), includes all of the conduct proscribed by the North Carolina indecent liberties statute); United States v. Gilbert, 425 Fed.Appx. 212 (4th Cir.2011) (per curiam) (unpublished) (holding that North Carolina’s indecent liberties statute triggers sentencing enhancement under 18 U.S.C. § 2252A(b)(2), possession of child pornography).
Deeming it imperative to close a perceived gap in the punishments authorized by the residual clause of the ACCA resulting from the Supreme Court's "intricate webs of doctrine” thereunder in its crafting of the categorical approach to ACCA, Judge Wilkinson effectively imports a "sexual assault of a minor” refinement from the Sentencing Guidelines into the ACCA analysis in this case. Respectfully, it seems to me that such judicial lawmaking exceeds the proper bounds of our role.

. Femando was a prosecution under 18 U.S.C. § 2422(b) (prohibiting the use of interstate commerce to coerce or entice a minor to engage in illegal sexual activity). Under that statute, a conviction may rest on an underlying violation of (or attempted violation of) state law, such as, in Fernando, the North Carolina indecent liberties statute.

. Importantly, as Judge King points out, the government has abandoned its contention that the "use of physical force" prong of the ACCA is applicable in this case. Ante at 779 n. 2 (Op. of King, J.). As Justice Scalia explained in Johnson, it is "when the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not," that the modified categorical approach is authorized. Johnson v. United States, - U.S. -, 130 S.Ct. 1265, 1273, 176 L.Ed.2d 1 (2010) (emphasis added). Johnson, of course, was a "use of force” case and Taylor and Shepard were "enumerated offenses” cases. It is surprising, therefore, that those arguing in favor of applying the modified categorical approach have failed to reconcile support for their view with the manifest difference between the possible application of the "use of physical force” *792 prong and the "risk of physical injury prong.” They rely heavily on Johnson. Thus, their unspoken (but unmistakable) underlying assumption is that physical force is inherent in the "lewd and lascivious” manner of violating the indecent liberties statute. The North Carolina precedents spread throughout our raft of opinions in this case soundly rebut that assumption.
In any event, Judge Keenan’s heavy reliance on what Chambers says "about” Shepard, and on Johnson s "use of physical force” analysis, to justify application of the modified categorical approach in this "risk of injury” case, provides scant support for the application of the modified categorical approach here. See post at 798-801 (Op. of Keenan, J.).

. Contrary to the reading of Hartness advanced by Judge Keenan and Judge Niemeyer, to the extent that subsections (a)(1) and (a)(2) of the indecent liberties statute create either (1) an overarching, nongeneric offense having a subsumed generic offense (a la Taylor and Shepard) (Judge Keenan), or (2) two generic offenses (a la Chambers and Johnson) (Judge Niemeyer), subsequent cases in North Carolina demonstrate the correctness of Judge King’s reading of that case. The North Carolina Supreme Court’s ambiguous reference to "alternative elements” in Hartness has been clearly elaborated:
In our recent opinion in State v. Hartness, 326 N.C. 561, 391 S.E.2d 177 (1990), this Court held that it was not error to instruct *794 the jury disjunctively as to various alternative acts, either of which would establish an element of the offense charged. Although some of the jurors may find the defendant guilty based on their belief that the defendant committed act A and some may base their vote of guilty on the defendant’s participation in act B, such alternative findings do not render the jury's verdict nonunanimous as long as the alternative acts found establish an element of the offense and do not, in and of themselves, constitute a separate offense.... As in Hartness, the defendant in this case was convicted under a statute proscribing a single offense that may be established by a finding of any one of several alternative acts---- Just as in Hartness, wherein we concluded that the offense of indecent liberties may be proved by several different acts, a violation of N.C.G.S. § 14-31 may be proved by showing an assault and battery upon one or more victims. In Hartness, we concluded that it was immaterial that the jurors may have differed as to which specific sexual act they believed the defendant to have committed as long as all of the jurors found that the defendant had committed a sexual act. We stated:
The risk of a nonunanimous verdict does not arise in cases such as the one at bar because the statute proscribing indecent liberties does not list, as elements of the offense, discrete criminal activities in the disjunctive.... Defendant’s purpose for committing such act is the gravamen of this offense; the particular act performed is immaterial.
Hartness, 326 N.C. at 564, 567, 391 S.E.2d at 179, 180.... The Hartness reasoning applies equally well here.
State v. Lyons, 330 N.C. 298, 412 S.E.2d 308, 316-17 (1991) (Meyer, J., dissenting) (emphases added); see also State v. Almond, 112 N.C.App. 137, 435 S.E.2d 91, 96 (1993) ("In Lyons, Justice Whichard went on to stress the importance of examining the gravamen of the offense which the legislature intended to prevent. In Lyons, it was held that the 'gravamen of the offense of maliciously assaulting in a secret manner is the assaulting of a particular individual in that manner.’ Id. at 307, 412 S.E.2d at 314. The gravamen of the offense in Hartness was not the conduct of the defendant, but his intent or purpose. Id.").
Thus, the focus of Hartness was on the alternative acts or means by which a violation of the indecent liberties statute could be proven.

. In contrast to the actual holdings of the North Carolina courts, Judge Keenan would apparently identify 16 discrete offenses based on the "alternative elements” of the indecent liberties statute, apparently along the following lines:
1) Did take immoral liberties for the purpose of arousing sexual desire;
2) Did take improper liberties for the purpose of arousing sexual desire;
3) Did take indecent liberties for the purpose of arousing sexual desire;
4) Did attempt to take immoral liberties for the purpose of arousing sexual desire;
5) Did attempt to take improper liberties for the purpose of arousing sexual desire;
*795 6) Did attempt to take indecent liberties for the purpose of arousing sexual desire;
7) Did take immoral liberties for the purpose of gratifying sexual desire;
8) Did take improper liberties for the purpose of gratifying sexual desire;
9) Did take indecent liberties for the purpose of gratifying sexual desire;
10) Did attempt to take immoral liberties for the purpose of gratifying sexual desire;
11) Did attempt to take improper liberties for the purpose of gratifying sexual desire;
12) Did attempt to take indecent liberties for the purpose of gratifying sexual desire;
13) Did commit a lewd act upon the body of the child;
14) Did commit a lascivious act upon the body of the child;
15) Did attempt to commit a lewd act upon the body of the child; and
16) Did attempt to commit a lascivious act upon the body of the child.
Brief of Appellant at 15 n. 5, United States v. Ramirez-Garcia, 646 F.3d 778 (11th Cir.2011) (No. 10-13279-FF), 2010 WL 5622138 at *15 n. 5 (describing the foregoing as 16 ways to violate one of the elements of the North Carolina indecent liberties statute).
It is not entirely clear which of the above 16 clusters of "alternative elements” are encompassed by Judge Keenan's “blank slate” approach, but presumably only convictions resting on clusters 13 and 14 would qualify. Thus, I would presume, even if a defendant pled guilty to a "subsection (a)(2) offense,” it would be open to that defendant in a subsequent federal court prosecution to show, through application of the modified categorical approach favored by my colleagues, that he in fact committed one of the other "categories” of offenses under the indecent liberties statute (i.e., one that did not pose a risk of physical injury), and therefore was ineligible for a sentence enhancement or an increase in his guidelines base offense level. See post at 800 n. 1 (Op. of Keenan, J.).
These questions are left open by the en banc decision in this case, but surely my colleagues do not mean to suggest that the modified categorical approach applies only when it aids the government, but not when it aids the defendant.

. I am uncertain, as were the dissenting justices in Sykes, precisely how the Sykes majority’s "risk assessment” approach actually is likely to be employed in future cases. See Sykes, 131 S.Ct. at 2285 (Scalia, J., dissenting) ("But what about the test that determined the outcome in our second case in this "series”— the "purposeful, violent, and aggressive” test of Begay? Fear not. That incompatible variation has been neither overlooked nor renounced in today’s tutti-frutti opinion.”); id. at 2289 n. 1 (Kagan, J., dissenting) ("I understand the majority to retain the ‘purposeful, violent, and aggressive’ test, but to conclude that it is ‘redundant’ in this case____ I assume this test will make a resurgence — that it will be declared nonredundant — the next time the Court considers a crime, whether intentional or not, that involves risk of injury but not aggression or violence.”).
In any event, it bears emphasis, as Judge King explains, ante at 781-82 (Op. of King, J.), that just as Begay involved a kind of strict liability statute, so too does the North Carolina indecent liberties statute sound in strict liability. That is to say, a good faith mistake as to the victim’s age is not a defense to such a charge. State v. Breathette, 690 S.E.2d 1 (N.C.Ct.App.2010). Although the statute is commonly understood to be a "specific intent” crime, requiring as it does that the purpose of the defendant’s prohibited acts be for sexual gratification, there is nonetheless no mens rea requirement as to the element of the victim’s age.

. The sole exception appears to be United States v. Martinez-Vazguez, 410 Fed.Appx. 28, 30 (9th Cir.2010) (stating that Baza-Martinez declined to apply modified categorical approach "only because” no Shepard-approved documents were in the record, and going on to apply the modified categorical approach to find that a North Carolina indecent liberties conviction supported an offense level increase under U.S.S.G. § 2L1.2).

. See Sykes, 131 S.Ct. at 2287 (Scalia, J., dissenting):
The Court’s ever-evolving interpretation of the residual clause will keep defendants and judges guessing for years to come. The reality is that the phrase "otherwise involves conduct that presents a serious potential risk of physical injury to another” does not clearly define the crimes that will subject defendants to the greatly increased ACCA penalties. It is not the job of this Court to impose a clarity which the text itself does not honestly contain. And even if that were our job, the further reality is that we have by now demonstrated our inability to accomplish the task.

. See also United States v. Harrison, 558 F.3d 1280, 1294-95 (11th Cir.2009) (“In some crimes, such as armed robbery, rape, and arson, the serious potential risk of physical injury is obvious. But in lesser crimes, courts, without empirical evidence, are left to rely on their own intuition about whether certain kinds of behavior pose serious potential risks of physical injury.”).