DILLON, Judge.
 

 *804
 
 Seid Michael Mostafavi ("Defendant") appeals from judgment entered after he was convicted in a bench trial of two counts of obtaining property by false pretenses. We hereby vacate Defendant's convictions.
 
 [1]
 

 *510
 
 Defendant was also convicted of a single count of felony larceny. However, Defendant did not properly preserve his challenge to this conviction. In our discretion, we decline to invoke Rule 2 and do not address Defendant's challenge regarding his conviction for felony larceny.
 

 I. Background
 

 Defendant was charged with a number of crimes in connection with a break-in of a house where certain items were later discovered to have been stolen.
 

 The State's evidence tended to show as follows: A home shared by two individuals was broken into while they were on vacation. The house-sitter testified that she was indebted to Defendant and allowed Defendant to break into the home and to help himself to certain items belonging to the two victims. Some of the missing items were found and recovered at a pawn shop. These items were either sold or pawned by Defendant.
 

 Defendant testified and presented evidence tending to show that the house-sitter claimed she owned the stolen items and that he bought the items from the house-sitter for a negotiated price.
 

 The trial court found Defendant guilty of one count of felony larceny and two counts of obtaining property by false pretenses from the pawn shop. The trial court sentenced Defendant accordingly. Defendant appeals.
 

 II. Analysis
 

 Defendant makes several arguments on appeal, which are addressed in turn below.
 

 *805
 
 A. Larceny Conviction
 

 Defendant argues that there was a fatal variance between the indictment and the evidence presented at trial on the larceny charge. Specifically, he notes that the indictment identified one of the homeowners as the owner of the stolen property. This is indicated by the State's evidence, which showed that the stolen property was owned by the other homeowner.
 
 See
 

 State v. Greene
 
 ,
 
 289 N.C. 578
 
 , 584-85,
 
 223 S.E.2d 365
 
 , 369-70 (1976).
 

 Defendant concedes that he failed to properly preserve this issue on appeal. Defendant requests we invoke Rule 2 of the North Carolina Rules of Appellate Procedure to review the merits of his claim.
 

 Appellate Rule 2 authorizes this Court to "suspend or vary the requirements or provisions of any of [the Rules of Appellate Procedure]." N.C. R. App. P. 2. Although Appellate Rule 2 is available to prevent "manifest injustice," our Supreme Court has stated that this residual power to vary the default provisions of the appellate procedure rules should only be invoked on " 'rare occasions' and under 'exceptional circumstances.' "
 
 Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.,
 

 362 N.C. 191
 
 , 201,
 
 657 S.E.2d 361
 
 , 367 (2008).
 

 Defendant has failed to demonstrate the "exceptional circumstances" necessary to for us to invoke Appellate Rule 2.
 

 Id.
 

 In the exercise of our discretion, we decline to invoke Appellate Rule 2 to reach the merits of Defendant's argument regarding his felony larceny conviction. Defendant's larceny conviction remains undisturbed.
 

 B. Indictment-Obtaining Property By False Pretenses
 

 Defendant contends the trial court erred by failing to dismiss the charges for obtaining property by false pretenses. Defendant contends that the language in the indictment describing the property obtained as "UNITED STATES CURRENCY" was not sufficient to sustain the indictment. We agree.
 

 "Where an indictment is alleged to be invalid on its face, thereby depriving the trial court of its jurisdiction, a challenge to that indictment may be made at any time, even if it was not contested in the trial court."
 
 State v. Wallace
 
 ,
 
 351 N.C. 481
 
 , 503,
 
 528 S.E.2d 326
 
 , 341 (2000).
 

 We conclude that our Supreme Court's decision in
 
 State v. Reese
 
 ,
 
 83 N.C. 637
 
 (1880), which was reaffirmed by that Court in 1941 in
 
 State v. Smith
 
 ,
 
 219 N.C. 400
 
 ,
 
 14 S.E.2d 36
 
 (1941), and reaffirmed again in 2014 in
 
 State v. Jones
 
 ,
 
 367 N.C. 299
 
 ,
 
 758 S.E.2d 345
 
 (2014), compels
 
 *806
 
 us to conclude that the indictment charging Defendant with obtaining "UNITED STATES CURRENCY" by false pretenses was fatally defective
 
 *511
 
 because it failed to describe the United States Currency obtained with sufficient specificity. These cases instruct that, where money is the thing obtained by false pretenses, the money must be described "
 
 at least by the amount
 
 , as, for instance, so many dollars and cents."
 
 Smith
 
 ,
 
 219 N.C. at 401
 
 ,
 
 14 S.E.2d at 36-37
 
 (emphasis added).
 

 1. Current Supreme Court Jurisprudence Compels our Conclusion that the Indictment is Fatally Defective
 

 Our Supreme Court has repeatedly held that an indictment is constitutionally sufficient if it "apprises the defendant of the charge against him with enough certainty to enable him to prepare his defense and to protect him from subsequent prosecution for the same offense."
 
 State v. Snyder
 
 ,
 
 343 N.C. 61
 
 , 65,
 
 468 S.E.2d 221
 
 , 224 (1996) (citation omitted).
 

 Here, Defendant was indicted for violating
 
 N.C. Gen. Stat. § 14-100
 
 , which provides that a person is guilty of obtaining property by false pretenses where he obtains "any money, goods, ..., services ..., or other thing of value" by means of a false pretense.
 
 N.C. Gen. Stat. § 14-100
 
 (2011).
 

 For indictments charging under
 
 N.C. Gen. Stat. § 14-100
 
 , our Supreme Court has held that "
 
 the thing obtained
 
 [ (i.e., the money, goods, services, etc.) by false pretenses]
 
 must be described with reasonable certainty
 
 , and by the name or term usually employed to describe it."
 
 Jones
 
 ,
 
 367 N.C. at 307
 
 ,
 
 758 S.E.2d at 351
 
 (emphasis added) (internal quotation marks omitted).
 

 In 1880, our Supreme Court held in
 
 State v. Reese
 
 that an indictment describing the property obtained as "money" was fatally defective, stating that "the money obtained should have been described
 
 at least by the amount
 
 -
 
 as, for instance, so many dollars and cents
 
 ."
 
 Reese,
 

 83 N.C. at 639
 
 (emphasis added).
 

 In 1941, our Supreme Court reaffirmed its 1880 holding.
 
 See
 

 Smith
 
 ,
 
 219 N.C. at 401
 
 ,
 
 14 S.E.2d at 36-37
 
 . In
 
 Smith
 
 , the indictment described the money as "goods and things of value."
 

 Id.
 

 The Court held that this description was fatally defective. Relying on its 1880 decision in
 
 Reese
 
 , the Court stated that the money "should have been described [in the indictment]
 
 at least by the amount, as, for instance, so many dollars and cents
 
 ."
 
 Id.
 
 at 401,
 
 14 S.E.2d at 36-37
 
 (emphasis added).
 

 More recently, in 2014, our Supreme Court reaffirmed both the 1880
 
 Reese
 
 and the 1941
 
 Smith
 
 decisions, stating as follows:
 

 *807
 
 This Court has not had occasion to address this issue recently, but consistently has held that simply describing the property obtained as "money,"
 
 State v. Reese
 
 ,
 
 83 N.C. 637
 
 , 640 (1880), or "goods and things of value,"
 
 State v. Smith
 
 ,
 
 219 N.C. 400
 
 , 401,
 
 14 S.E.2d 36
 
 , 36 (1941), is insufficient to allege the crime of obtaining property by false pretenses.
 

 Jones
 
 ,
 
 367 N.C. at 307
 
 ,
 
 758 S.E.2d at 351
 
 . Following the reasoning in these older cases, our Supreme Court held that an indictment alleging that the defendant obtained "services" without some description as to
 
 the type
 
 of services which were fraudulently obtained, was fatally defective.
 
 Id.
 
 at 307-08,
 
 758 S.E.2d at 351
 
 . The Court so held even though, like in the present case, the indictment was specific in identifying the
 
 name
 
 of the victim, the
 
 date
 
 of the offense, and the stolen credit card defendant used to obtain the services.
 
 [2]
 

 "United States Currency" is synonymous with "money," though the former language does provide
 
 some
 
 further description of the money as some
 
 unspecified
 
 amount of "dollars and cents" issued by
 
 our
 
 federal government, rather than by a foreign government.
 
 See
 

 State v. Gibson
 
 ,
 
 169 N.C. 318
 
 , 320,
 
 85 S.E. 7
 
 , 9 (1915) (defining "money" as "any lawful currency, whether coin or paper, issued by the Government as a medium of exchange"). However, this description-"UNITED STATES CURRENCY"-still falls short of the specificity which our Supreme Court has repeatedly indicated is
 
 minimally required
 
 in describing money in a false pretenses indictment, namely, that the description "
 
 at least
 
 [state] the amount" of
 
 *512
 
 "dollars and cents."
 
 Reese
 
 ,
 
 83 N.C. at 639
 
 (emphasis added).
 

 And where the amount of money is
 
 not
 
 known to the pleader, our Supreme Court instructs that describing the money by the name of the victim from whom it was obtained, the date it was obtained, and the false pretense used to obtain the money is still not sufficiently specific. For instance, the indictment found to be fatal in the 1880
 
 Reese
 
 case alleged that "on 1 January 1876," the defendant defrauded "Henderson Pritchard and John A. Pritchard" out of "goods and money" by stating that he was the owner of "a large and valuable farm, with team and stock thereon, in the county of Northampton[.]"
 
 Reese
 
 ,
 
 83 N.C. at 638
 
 . The indictment found to be fatal in the 1941
 
 Smith
 
 case alleged that the defendant defrauded "Freeman Grady" of "goods and things of value" by pretending that he owned "two certain mules ... free and clear of
 
 *808
 
 all encumbrances[.]"
 
 Smith
 
 ,
 
 219 N.C. at 401
 
 ,
 
 14 S.E.2d at 36
 
 . And in the 2014
 
 Jones
 
 case, the indictment found to be fatal alleged the name of the victim as a certain auto service business, the date of the offense, and that the item used by the defendant to obtain "services" was "the credit card number belonging to Mary Berry."
 
 See
 
 Record on Appeal at 7,
 
 State v. Jones
 
 , No. COA12-282.
 

 Our Court has on occasion sustained indictments which seemingly conflict with our Supreme Court's decisions.
 
 See
 

 State v. Ricks
 
 , --- N.C.App. ----,
 
 781 S.E.2d 637
 
 (2016) ;
 
 see also
 

 State v. Ledwell
 
 ,
 
 171 N.C.App. 314
 
 ,
 
 614 S.E.2d 562
 
 (2005).
 
 [3]
 

 In
 
 Ricks
 
 -the recent case from our Court relied upon by the dissenting judge in the present case-our Court decided not to follow the Supreme Court precedent cited above, reasoning that the Supreme Court's analysis in those cases was "faulty" and "incorrect."
 
 Ricks
 
 , --- N.C.App. at ----,
 
 781 S.E.2d at 644
 
 . In
 
 Ricks
 
 , our Court sustained an indictment which described the property as "a quantity of U.S. currency" relying on
 
 N.C. Gen. Stat. § 15-149
 
 , which was originally codified in 1877.
 

 Id.
 

 at ----,
 
 781 S.E.2d at 642
 
 . The
 
 Ricks
 
 panel distinguished the 1880
 
 Reese
 
 opinion, stating that
 
 Reese
 
 was based on the law prior to the enactment of
 
 N.C. Gen. Stat. § 15-149
 
 . However, we conclude
 
 infra
 
 that our Supreme Court in
 
 Reese
 
 did apply the language in
 
 N.C. Gen. Stat. § 15-149
 
 .
 

 Id.
 

 at ----,
 
 781 S.E.2d at 648
 
 . Then, our
 
 Ricks
 
 panel chose not to apply our Supreme Court's 1941
 
 Smith
 
 and 2014
 
 Jones
 
 decisions which reaffirmed
 
 Reese
 
 , stating as follows:
 

 The [1941 Supreme] Court failed to look to the statute when deciding
 
 Smith
 
 . The Court quoted
 
 Reese
 
 , but failed to follow
 
 Reese
 
 as a whole by not considering the statute governing the description of money in indictments. This faulty citation to
 
 Reese
 
 ... led our [Supreme] Court to the incorrect conclusion again in
 
 Jones
 
 .
 

 Ricks
 
 , --- N.C.App. at ----,
 
 781 S.E.2d at 644
 
 . Therefore, rather than relying on Supreme Court precedent which had been reaffirmed as recently as 2014, our
 
 Ricks
 
 panel relied on a 2005 opinion from our Court which sustained an indictment describing the property merely as "a quantity of U.S. Currency."
 
 See
 

 *809
 

 State v. Ledwell,
 

 171 N.C.App. 314
 
 , 318,
 
 614 S.E.2d 562
 
 , 565 (2005). In
 
 Ledwell
 
 , our Court held that the case was distinguishable from
 
 Reese
 
 and
 
 Smith
 
 because "the [
 
 Ledwell
 
 ] indictment mentions the specific item which defendant used to obtain the money," and therefore provided the defendant with "notice of the crime of which he [was] accused."
 

 Id.
 

 It could be argued that the additional facts gave the defendant notice; however, the indictments in
 
 Reese
 
 ,
 
 Smith
 
 , and more recently
 
 Jones
 

 also
 
 described the items used by the defendants to obtain the property.
 

 In general, and as noted by the dissent, where a panel of the Court of Appeals has decided an issue, "a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."
 
 In re Civil Penalty
 
 ,
 
 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 36 (1989). However,
 
 *513
 
 "where there is a conflict between an opinion from this Court and one from our Supreme Court, we are bound to follow the Supreme Court's opinion"
 
 Employment Staffing Grp., Inc. v. Little
 
 , --- N.C.App. ----, ---- n.3,
 
 777 S.E.2d 309
 
 , 313 n.3 (2015) ;
 
 see also
 

 Crawford v. Commercial Union Midwest Ins. Co.
 
 ,
 
 147 N.C.App. 455
 
 , 459 n.5,
 
 556 S.E.2d 30
 
 , 33 n.5 (2001) ("When there is a conflict in the opinions of this Court and opinions of our Supreme Court, we are bound by the Supreme Court opinion." (citing
 
 Mahoney v. Ronnie's Rd. Serv
 
 .,
 
 122 N.C.App. 150
 
 , 153,
 
 468 S.E.2d 279
 
 , 281 (1996),
 
 aff'd per curiam
 
 ,
 
 345 N.C. 631
 
 ,
 
 481 S.E.2d 85
 
 (1997) )). Because we determine here that
 
 Ricks
 
 ,
 
 Ledwell
 
 , and their progeny are in conflict with
 
 Jones
 
 ,
 
 Smith
 
 , and
 
 Reese
 
 -binding precedent from our Supreme Court-we are not bound by this Court's prior opinions and must instead follow the guidance of our Supreme Court.
 
 Employment Staffing
 
 , --- N.C. App. at ---- n.3,
 
 777 S.E.2d at
 
 313 n.3.
 

 In sum, our Court "has no authority to overrule decisions of our Supreme Court and we have the responsibility to follow those decisions until otherwise ordered[.]"
 
 Andrews v. Haygood
 
 ,
 
 188 N.C.App. 244
 
 , 248,
 
 655 S.E.2d 440
 
 , 443,
 
 aff'd
 
 ,
 
 362 N.C. 599
 
 ,
 
 669 S.E.2d 310
 
 (2008) (internal quotation marks omitted). It is not for the Court of Appeals to say that the Supreme Court's jurisprudence is "faulty" or "incorrect." Therefore, following
 
 Reese, Smith
 
 and
 
 Jones
 
 , as we are bound to do, we must conclude that the indictments charging Defendant with obtaining "UNITED STATES CURRENCY" by false pretenses are fatally defective, and the judgments convicting him of those crimes are therefore vacated.
 

 2.
 
 N.C. Gen. Stat. § 15-149
 
 Does Not Overrule Supreme Court Precedent
 

 Our Court in
 
 Ricks
 
 relied, in part, on language in
 
 N.C. Gen. Stat. § 15-149
 
 to conclude that the language in the indictment in that case
 
 *810
 
 describing the thing obtained as "U.S. Currency" is sufficient. This statute provides in relevant part as follows:
 

 In every indictment which it is necessary to make any averment as to the larceny of any money, or United States treasury note, or any note of any bank whatsoever, it is sufficient to describe such money, or treasury note, or bank note, simply as money, without specifying any particular coin, or treasury note, or bank note[.]
 

 N.C. Gen. Stat. § 15-149
 
 (2013).
 

 The predecessor of
 
 N.C. Gen. Stat. § 15-149
 
 was originally enacted by our General Assembly in 1877 (the "1877 Act") and is referenced in the 1880
 
 Reese
 
 decision.
 
 See
 

 Reese
 
 ,
 
 83 N.C. at 639
 
 . Our
 
 Ricks
 
 panel suggests that
 
 Reese
 
 stands for the proposition that
 
 N.C. Gen. Stat. § 15-149
 
 was intended to
 
 relieve
 
 the drafter of an indictment from having to describe money obtained by false pretenses "at least" by its amount. However, we conclude that
 
 Reese
 
 stands for the proposition that
 
 N.C. Gen. Stat. § 15-149
 
 merely relieved the drafter of the more stringent requirement of that day to
 
 also
 
 "[describe] and [identify] [the exact type of] bank bills, Treasury notes, [etc.]" that were obtained.
 

 Id.
 

 Unlike today, where our paper money consists solely of "federal reserve notes," paper money in the 1800's was issued in a variety of forms, including "bank notes" issued by state and federally-chartered banks and "treasury notes" issued by the federal government.
 
 [4]
 

 Prior to the passage of the 1877 Act, drafters of indictments were generally required to describe not only the
 
 amount
 
 of money obtained, but also the
 
 type
 
 of money obtained, e.g. three $10 bank notes or two $5 dollar treasury notes, etc.
 
 See
 

 State v. Fulford
 
 ,
 
 61 N.C. 563
 
 , 563 (1868) (stating that "[i]t is sufficient to describe [the money] as a bank note for so many dollars on a certain bank, of
 
 *514
 
 the value of so many dollars");
 
 see also
 

 State v. Thomason
 
 ,
 
 71 N.C. 146
 
 , 146-47 (1874) (holding that language indicating "two five dollar United States Treasury notes" to be sufficient);
 
 State v. Rout
 
 ,
 
 10 N.C. 618
 
 , 618 (1825) (holding that language indicating
 
 *811
 
 "one twenty dollar bank note on the State Bank of North Carolina" was sufficient). As stated by the Supreme Court in
 
 Reese
 
 , a pre-1877 indictment which merely described the thing obtained as "money" without any further description was fatally defective.
 
 Reese
 
 ,
 
 83 N.C. at 639
 
 .
 

 The
 
 Reese
 
 Court noted that the General Assembly had passed the 1877 Act "to remedy the difficulty of
 
 describing and identifying
 
 bank bills, Treasury notes, etc."
 

 Id.
 

 at 639
 
 (emphasis added). However, the Court still held that even under the recently enacted statute, describing the thing obtained merely as " 'money', without anything added to make it more definite, is too loose in indictments of this kind[,]"
 

 id.
 

 at 640
 
 , and that the money should be "described at least by the amount."
 

 Id.
 

 at 639
 
 . Our Supreme Court reaffirmed this understanding of our law in the 1941
 
 Smith
 
 decision and again more recently in its 2014
 
 Jones
 
 decision.
 

 N.C. Gen. Stat. § 15-149
 
 does state that "it is sufficient to describe such money, or treasury note, or bank note,
 
 simply as money
 
 ," which could be construed to relieve an indictment drafter from any requirement to provide some further description of the money obtained, for instance, the
 
 amount
 
 of money.
 
 N.C. Gen. Stat. § 15-149
 
 (emphasis added.) However, the phrase "simply as money" in the statute is followed by the qualifying language, "without specifying any particular coin, or treasury note, or bank note[,]" which clarifies that the statute is intended only to relieve a drafter of the requirement of describing the
 
 type
 
 of money obtained, e.g., type of bank note or treasury note or coins.
 

 III. Conclusion
 

 In conclusion, as our Supreme Court restated in its 2014
 
 Jones
 
 decision, there remains a requirement to describe the thing obtained in an indictment for false pretenses with "reasonable certainty."
 
 Jones
 
 ,
 
 367 N.C. at 307
 
 ,
 
 758 S.E.2d at 351
 
 . Where the thing obtained is money,
 
 N.C. Gen. Stat. § 15-149
 
 does not require that the indictment provide a description of each piece of money in detail (e.g. "three $10 federal reserve notes"). However,
 
 some
 
 further description of the money must be included in the indictment to be sufficient. Our Supreme Court has held that describing the victim, date, and manner by which the money was obtained is simply not enough. There must be some further description of the money itself, "at least" by its amount (e.g. "$30 in U.S. Currency"). Accordingly, we vacate Defendant's obtaining property by false pretenses convictions. Defendant's felony larceny conviction is affirmed.
 

 AFFIRMED IN PART; VACATED IN PART.
 

 Chief Judge McGEE concurs.
 

 Judge TYSON concurs in part and dissents in part by separate opinion.
 

 TYSON, Judge, concurring in part, dissenting in part.
 

 *812
 
 I fully concur with those portions of the majority's opinion, which affirm Defendant's felony larceny conviction and holds Defendant's IAC claims are without merit. I respectfully dissent from the majority's notion that the description of the property obtained as "UNITED STATES CURRENCY" is insufficient to lawfully sustain the indictment for obtaining property by false pretenses. This Court is bound by its previous un-appealed and precedential decisions.
 
 See
 

 State v. Ricks
 
 , --- N.C.App. ----, ----,
 
 781 S.E.2d 637
 
 , 645 (2016) ;
 
 State v. Ledwell
 
 ,
 
 171 N.C.App. 314
 
 , 317-18,
 
 614 S.E.2d 562
 
 , 565 (2005) ;
 
 State v. Almond
 
 ,
 
 112 N.C.App. 137
 
 , 148,
 
 435 S.E.2d 91
 
 , 98 (1993) ;
 
 see also
 

 In Re Civil Penalty
 
 ,
 
 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 37 (1989). Defendant's convictions for obtaining property by false pretenses are properly affirmed.
 

 I. Indictments for Obtaining Property by False Pretenses
 

 "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."
 

 *515
 

 In Re Civil Penalty
 
 ,
 
 324 N.C. at 384
 
 ,
 
 379 S.E.2d at 37
 
 .
 

 A.
 
 State v. Ricks
 

 Last year, this Court considered "the same issue" in
 
 Ricks
 
 .
 
 Id
 
 . In
 
 Ricks
 
 , this Court upheld a conviction for obtaining property by false pretenses where the indictment described the property obtained as "a quantity of U.S. Currency."
 
 State v. Ricks
 
 , --- N.C. App. at ----,
 
 781 S.E.2d at 645
 
 .
 

 This Court held the indictment did not contain a fatal defect to deprive the trial court of jurisdiction.
 
 Id
 
 . This conclusion was based upon application of
 
 N.C. Gen. Stat. § 15-149
 
 and a review of the prior Supreme Court decisions cited by Defendant and in the majority's opinion.
 
 Id
 
 . ;
 
 see
 

 State v. Jones
 
 ,
 
 367 N.C. 299
 
 , 307-08,
 
 758 S.E.2d 345
 
 , 351 (2014) (holding the indictment alleging defendant obtained "services" failed to describe with reasonable certainty the property obtained);
 
 State v. Smith
 
 ,
 
 219 N.C. 400
 
 , 401,
 
 14 S.E.2d 36
 
 , 36 (1941) (holding the indictment alleging defendant obtained "goods and things of value" was insufficient);
 
 State v. Reese
 
 ,
 
 83 N.C. 637
 
 , 639 (1880) (holding the indictment alleging defendant obtained "goods and money" was too vague and uncertain).
 

 *813
 
 The majority opinion in
 
 Ricks
 
 explained:
 

 [
 
 N.C. Gen. Stat. § 15-149
 
 ] which says describing money simply as "money" is sufficient suggests that term is enough to put a defendant on notice of the property obtained in order to prepare for his or her trial. Here, we have an indictment describing the property as "U.S. Currency," a term more specific than money.
 

 Ricks
 
 , --- N.C.App. at ----,
 
 781 S.E.2d at 645
 
 .
 

 This holding is wholly consistent with multiple binding precedents of this Court.
 
 See
 

 Ledwell
 
 ,
 
 171 N.C.App. at 317-18
 
 ,
 
 614 S.E.2d at 565
 
 (holding the indictment was sufficient where it mentioned the specific item which defendant used to obtain the money);
 
 Almond
 
 ,
 
 112 N.C.App. at 148
 
 ,
 
 435 S.E.2d at 98
 
 (holding there was nothing ambiguous about the indictment where it alleged defendant obtained "United States money");
 
 see also
 

 State v. Crowder
 
 , --- N.C.App. ----,
 
 795 S.E.2d 833
 
 (2017) (unpublished) (holding this Court is bound by
 
 Ricks
 
 to hold the indictment was not fatally defective);
 
 State v. Thompson
 
 ,
 
 179 N.C.App. 652
 
 ,
 
 634 S.E.2d 641
 
 (2006) (unpublished) (holding the indictment was sufficient where it alleged the defendant obtained "money" by accepting a wallet that did not belong to him).
 

 Neither Defendant nor the majority's opinion attempts to distinguish this case from
 
 Ricks
 
 or the other cases cited above. The majority's opinion acknowledges U.S. Currency "is practically synonymous with 'money,' though admittedly, the former language does provide
 
 some
 
 further description of the money ... issued by
 
 our
 
 federal government." (emphasis original). Rather, Defendant and the majority's opinion assert this Court in
 
 Ricks
 
 misconstrued
 
 N.C. Gen. Stat. § 15-149
 
 and attempted to "overrule" the Supreme Court precedent in
 
 Jones
 
 ,
 
 Smith
 
 , and
 
 Reese
 
 . This Court cannot so rule.
 

 The majority's opinion attempts to resurrect and re-assert the identical arguments stated in the dissenting opinion in
 
 Ricks
 
 , even though the Defendant in
 
 Ricks
 
 did not exercise his appeal as of right to our Supreme Court, nor his right to petition for discretionary review before the Supreme Court.
 
 See
 

 Ricks
 
 , --- N.C.App. at ----,
 
 781 S.E.2d at 645
 
 (Dillon, J., concurring in part, dissenting in part). The defendant in
 
 Ricks
 
 also chose not to file a motion to withdraw the opinion or any motion for reconsideration before this Court. N.C. R. App. P. 37.
 

 This Court has no power to overrule our Supreme Court, and "we are bound by the rulings of our Supreme Court."
 

 *814
 

 Mahoney v. Ronnie's Rd. Serv.
 
 ,
 
 122 N.C.App. 150
 
 , 153,
 
 468 S.E.2d 279
 
 , 281 (1996). However, contrary to the majority's re-assertion of the dissent in
 
 Ricks
 
 , the
 
 Ricks
 
 majority opinion in no way attempted to overrule Supreme Court precedent.
 
 Ricks
 
 expressly considered, applied, and
 
 distinguished
 
 the above-referenced Supreme Court decisions from the case presented in
 
 Ricks
 
 , which is within this Court's authority to do.
 
 Ricks
 
 , --- N.C. App. at ----,
 
 781 S.E.2d at 643-45
 
 .
 

 Under binding Supreme Court precedents, we are bound by our prior decision and analysis
 
 *516
 
 in
 
 Ricks
 
 .
 
 See
 

 In Re Civil Penalty
 
 ,
 
 324 N.C. at 384
 
 ,
 
 379 S.E.2d at 37
 
 .
 
 Ricks
 
 clearly held an indictment, which alleges the defendant obtained "U.S. Currency," is legally sufficient to give the trial court jurisdiction. I am compelled to conclude the indictment in 15 CRS 57188 was not fatally defective.
 
 See
 

 id
 
 . ;
 
 Almond
 
 ,
 
 112 N.C. App. at 148
 
 ,
 
 435 S.E.2d at 98
 
 .
 

 B.
 
 State v. Ledwell
 

 Presuming,
 
 arguendo
 
 , that the failure to allege the specific amount of United States Currency is error, such "error" in this case is not fatal.
 
 See
 

 Ledwell
 
 ,
 
 171 N.C. App. at 317-18
 
 ,
 
 614 S.E.2d at 565
 
 .
 

 Chapter 15, Article 15 of the North Carolina General Statutes provides the indictment requirements for certain crimes, including
 
 N.C. Gen. Stat. § 15-149
 
 , at issue in this case. However, the General Assembly also clearly provided:
 

 Every criminal proceeding by warrant, indictment, information, or impeachment is sufficient in form for all intents and purposes if it express [es] the charge against the defendant in a plain, intelligible, and explicit manner; and
 
 the same shall not be quashed, nor the judgment thereon stayed, by reason of any informality or refinement, if in the bill or proceeding, sufficient matter appears to enable the court to proceed to judgment.
 

 N.C. Gen. Stat. § 15-153
 
 (2015) (emphasis supplied);
 
 see also
 

 State v. Greer
 
 ,
 
 238 N.C. 325
 
 , 327,
 
 77 S.E.2d 917
 
 , 919 (1953) (holding "[q]uashing indictments is not favored,"
 
 N.C. Gen. Stat. § 15-153
 
 was enacted to simplify forms of indictments, and this statute "has received a very liberal construction").
 

 An indictment must contain, "[a] plain and concise factual statement in each count which ... asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision
 
 *815
 
 clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation." N.C. Gen. Stat. § 15A-924(a)(5) (2015).
 

 As our Supreme Court has noted:
 

 "it is not the function of an indictment to bind the hands of the State with technical rules of pleading; rather, its purposes are to identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime."
 

 State v. Spivey
 
 ,
 
 368 N.C. 739
 
 , 742,
 
 782 S.E.2d 872
 
 , 874 (2016) (quoting
 
 State v. Sturdivant,
 

 304 N.C. 293
 
 , 311,
 
 283 S.E.2d 719
 
 , 731 (1981) ).
 

 "An indictment must allege all the essential elements of the offense endeavored to be charged[.]"
 
 Id
 
 . (citation and internal quotation marks omitted). The elements of obtaining property by false pretenses are "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another."
 
 State v. Childers,
 

 80 N.C.App. 236
 
 , 242,
 
 341 S.E.2d 760
 
 , 764 (1986).
 

 In
 
 Ledwell
 
 , the challenged indictments alleged the defendant attempted to obtain "United States currency" by false pretenses.
 
 Ledwell
 
 ,
 
 171 N.C.App. at 318
 
 ,
 
 614 S.E.2d at 565
 
 . This Court distinguished the indictment in
 
 Ledwell
 
 from those in
 
 Smith
 
 and
 
 Reese
 
 , "because the [
 
 Ledwell
 
 ] indictment mention[ed] the specific item which defendant used to obtain the money."
 
 Id
 
 . In concluding the indictment was sufficient, this Court noted:
 

 The term "United States currency" is sufficient to describe the money and the inclusion of the watch band in the indictment provides defendant with notice of the crime of which he is accused. The indictment in question set forth the elements necessary to provide defendant with proper notice regarding the conduct of attempting to obtain property by false pretenses.
 

 Id.
 

 Here, the two counts of obtaining property by false pretenses alleged Defendant obtained "UNITED STATES CURRENCY from CASH NOW PAWN" and the false pretenses consisted of the following:
 

 *816
 
 BY PAWING AN ACER LAPTOP, A VIZIO TELEVISION AND A COMPUTER
 

 *517
 
 MONITOR AS HIS OWN PROPERTY TO SELL, when in fact the property had been stolen from GRAHAM HYDER and the defendant was not authorized to sell the property.
 

 BY PAWING JEWERLRY AS HIS OWN PROPERTY TO SELL, when in fact the property had been stolen from GRAHAM HYDER and the defendant was not authorized to sell the property.
 

 The specificity of these indictments includes: (1) all the essential elements of the crime; (2) provides Defendant proper notice of the crimes with which he is accused; and, (3) protects him from being placed in jeopardy by the State more than once for the same crime.
 

 Moreover, if Defendant wished for additional information in the nature of the specific acts with which he was charged, he could have moved for a bill of particulars from the State.
 
 See
 
 N.C. Gen. Stat. § 15A-925 (2015) ;
 
 see
 

 State v. Wadford
 
 ,
 
 194 N.C 336
 
 , 338,
 
 139 S.E. 608
 
 , 610 (1927) (holding while a bill of particulars cannot cure a defect in the indictment, it may cure uncertainty and add specificity).
 

 The majority's opinion attempts to overrule
 
 Ledwell
 
 and
 
 Almond
 
 , just as it attempts to overrule
 
 Ricks
 
 , and argues
 
 Ledwell
 
 also misconstrued the Supreme Court decisions in
 
 Reese
 
 and
 
 Smith
 
 . However, as with the defendant in
 
 Ricks
 
 , the defendant in
 
 Ledwell
 
 never appealed to the Supreme Court and our Supreme Court in
 
 Jones
 
 did not overrule
 
 Ledwell
 
 .
 
 See
 

 Jones
 
 ,
 
 367 N.C. at 303
 
 ,
 
 758 S.E.2d at 348
 
 .
 
 Ledwell
 
 and
 
 Almond
 
 also stand as binding precedent this Court must follow.
 
 See
 

 In Re Civil Penalty
 
 ,
 
 324 N.C. at 384
 
 ,
 
 379 S.E.2d at 37
 
 .
 

 It is for the Supreme Court to determine whether this Court erred in the analysis and conclusions as set forth in
 
 Ricks
 
 and
 
 Ledwell
 
 .
 
 See
 
 id.
 

 Based upon the reasoning in both
 
 Ricks
 
 and
 
 Ledwell
 
 , Defendant's argument is without merit and the indictment for obtaining property by false pretenses is legally sufficient. The trial court did not err by failing to dismiss these charges. There is no error in Defendant's jury convictions for both charges.
 

 II. Insufficient Evidence
 

 As I vote to uphold the indictment alleging Defendant obtained property by false pretenses, I briefly address Defendant's contention the trial court erred by failing to dismiss these charges due to
 
 *817
 
 insufficient evidence to show that Defendant made a false representation of ownership.
 

 A. Standard of Review
 

 The standard of review for a trial court's denial of a motion to dismiss for insufficient evidence is
 
 de novo
 
 .
 
 State v. Smith
 
 ,
 
 186 N.C. App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). This Court must determine whether the State has offered "substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense."
 
 State v. Powell
 
 ,
 
 299 N.C. 95
 
 , 98,
 
 261 S.E.2d 114
 
 , 117 (1980). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 Smith,
 

 186 N.C.App. at 62
 
 ,
 
 650 S.E.2d at 33
 
 (citation and quotation marks omitted).
 

 "In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences."
 
 State v. Barnes
 
 ,
 
 334 N.C. 67
 
 , 75,
 
 430 S.E.2d 914
 
 , 918 (1993). Where "the evidence supports a reasonable inference of the defendant's guilt, a motion to dismiss is properly denied even though the evidence also permits a reasonable inference of the defendant's innocence."
 
 State v. Miller,
 

 363 N.C. 96
 
 , 99,
 
 678 S.E.2d 592
 
 , 594 (2009) (citation and quotation marks omitted).
 

 B. Analysis
 

 "The gist of obtaining property by false pretense is the false representation of a subsisting fact intended to and which does deceive one from whom property is obtained."
 
 State v. Linker
 
 ,
 
 309 N.C. 612
 
 , 614-15,
 
 308 S.E.2d 309
 
 , 310-11 (1983). Thus, the State must prove the defendant made the representation as alleged.
 
 Id
 
 . at 615,
 
 308 S.E.2d at 311
 
 . "If the state's evidence fails to establish that defendant made this misrepresentation but tends to show some other misrepresentation
 
 *518
 
 was made, then the state's proof varies fatally from the indictments."
 
 Id
 
 .
 

 Our Supreme Court has clearly stated, "the false pretense need not come through spoken words, but instead may be by act or conduct."
 
 State v. Parker
 
 ,
 
 354 N.C. 268
 
 , 284,
 
 553 S.E.2d 885
 
 , 897 (2001) ;
 
 see
 

 State v. Perkins
 
 ,
 
 181 N.C.App. 209
 
 , 216,
 
 638 S.E.2d 591
 
 , 596 (2007) ("[A] false pretense may be established by conduct alone and does not necessarily depend upon the utterance of false or misleading words.");
 
 State v. Bennett,
 

 84 N.C.App. 689
 
 , 691,
 
 353 S.E.2d 690
 
 , 692 (1987) ("In determining the absence or presence of intent, the jury may consider 'the acts and conduct of the defendant and the general circumstances existing at
 
 *818
 
 the time of the alleged commission of the offense charged.' ") (quoting
 
 State v. Hines,
 

 54 N.C.App. 529
 
 , 533,
 
 284 S.E.2d 164
 
 , 167 (1981) ).
 

 Defendant argues the State failed to present any evidence tending to show Defendant made a false representation to Cash Now Pawn. I disagree. The State called employee Austin Dotson to establish the events, which occurred at Cash Now Pawn. Dotson first testified regarding the general procedure for sale or loan transactions at the pawn shop. Dotson testified he requests the identification of the person presenting the property and "check[s] to make sure the person who handed [him] the identification is the same person as reflected in the identification." After checking identification, he and the customer sign a ticket acknowledging the person is "giving a security interest in the below described goods."
 

 Dotson testified he followed this procedure on 10 July 2015 and 21 July 2015. Dotson testified he checked the identification presented by the individual who pawned the items on both dates, and the identification listed Defendant's name. The State presented and entered into evidence the pawn tickets from both transactions, which listed the customer as Defendant but were not signed at the bottom. The tickets entered into evidence contained Defendant's name, address, driver's license number, and birthday. Dotson explained original signed receipts are kept by the owner pawning the property. Each ticket contained the following language, "[y]ou are giving a security interest in the below described goods" and "[b]y signing, I acknowledge ... I agree to all terms and conditions on the front and back[.]"
 

 Additional evidence shows Defendant had pawned items previously. Defendant further testified he had prepared a bill of sale in a personal property transaction. This bill of sale included language where the seller acknowledged the "property items were lawfully hers."
 

 Viewed in the light most favorable to the State and resolving all reasonable inferences in the State's favor, the State presented sufficient evidence tending to show Defendant's conduct constituted a false representation to submit the offense to the jury.
 
 See
 

 Barnes
 
 ,
 
 334 N.C. at 75
 
 ,
 
 430 S.E.2d at 918
 
 . Defendant was aware of the pawn shop's policies and through his conduct indicated to Cash Now Pawn that he had a right to sell or use the property being pawned as collateral. The trial court correctly denied Defendant's motion to dismiss the charges for insufficient evidence.
 

 III. Conclusion
 

 I fully concur with those portions of the majority's opinion, which affirm Defendant's felony larceny conviction and hold Defendant's IAC
 

 *819
 
 claims are without merit. As this Court is bound by its previous decisions in
 
 Ricks
 
 and
 
 Ledwell
 
 , I respectfully dissent from that portion of the majority's opinion vacating Defendant's convictions for obtaining property by false pretenses. There is no error in Defendant's convictions for obtaining property by false pretenses or in the judgments entered thereon.
 

 [1]
 

 Because we have vacated Defendant's convictions for obtaining property by false pretenses, we need not reach Defendant's IAC claim related to these convictions.
 

 [2]
 

 The indictment at issue in
 
 Jones
 
 alleged, in part, that "on or about the 19th day of May, 2010, in Mecklenburg County," the defendant did "obtain services from Tire Kingdom, Inc."
 

 [3]
 

 Other decisions from our Court are in accord with
 
 Ricks
 
 and
 
 Ledwell
 
 . For instance, in 1993, an indictment which identified the thing obtained as "United States money" was sustained.
 
 See
 

 State v. Almond
 
 ,
 
 112 N.C. App. 137
 
 , 148,
 
 435 S.E.2d 91
 
 , 98 (1993). In an unpublished 2006 opinion, an indictment which identified the thing obtained as "money" was sustained.
 
 See
 

 State v. Thompson
 
 , 2006 N.C. App. LEXIS 1962, *7.
 

 [4]
 

 The Citizens' State Bank in New Orleans issued a $10 bank note containing the word "DIX" (French for "ten"), which some historians believe is the genesis for the word "Dixie," an historical nickname for the southern region of the United States.
 
 See "Dixie" Originated From Name "Dix" An Old Currency
 
 , New Orleans American, May 29, 1916, vol. 2, no. 150, at 3. The word "greenbacks" originally described certain treasury notes with green ink used on the reverse side issued by the United States to help fund the Civil War.
 
 See
 

 Lackey v. Miller
 
 ,
 
 61 N.C. 26
 
 (1866).